169 P.3d 473 (2007)
David STEVENS, Donald A. Goines, and Jeffrey R. Porter, on behalf of all others similarly situated, Respondents,
v.
BRINK'S HOME SECURITY, INC., Appellant, and
Eddie Keeley Agnich (a/k/a Skip Keeley) and Howard Goakey, Defendants.
No. 79815-0.
Supreme Court of Washington, En Banc.
Argued May 17, 2007.
Decided October 18, 2007.
*474 Daniel L. Thieme, Leigh Ann Collings Tift, Littler Mendelson, James Zissler, Attorney at Law, Seattle, WA, for Appellants.
Martin S. Garfinkel, Adam J. Berger, Schroeter Goldmark & Bender, Jeffery Patton Robinson, Attorney at Law, Seattle, WA, for Respondents.
Kristopher Ian Tefft, Olympia, WA, Amicus Curiae on behalf of Association of Washington Business and Washington Retail Association.
OWENS, J.
¶ 1 A class comprised of 69 installation and service technicians (Technicians) filed an action against employer Brink's Home Security, Inc. (Brink's). Technicians alleged that Brink's violated the Washington Minimum Wage Act (MWA), chapter 49.46 RCW, by failing to compensate Technicians for time they spent driving company trucks from their homes to the first jobsite and back from the last jobsite (drive time). On summary judgment, the trial court held that Brink's was liable for the drive time claim. Brink's argues that the trial court erred in granting summary judgment on the drive time claim and in granting prejudgment interest, attorney fees, and costs. Brink's also challenges the rate at which the trial court assessed prejudgment and postjudgment interest. We affirm the trial court.

FACTS
¶ 2 This case arises from Technicians' employment with Brink's in the Puget Sound area between November 1999 and July 2005. Technicians installed and serviced home security systems. Brink's supplied Technicians with pickup trucks bearing the Brink's logo and configured to carry the necessary tools and equipment.
¶ 3 Brink's compensated all Technicians for the time spent driving the Brink's trucks between jobsites. For the time spent driving *475 to the first jobsite and from the last jobsite, Brink's offered Technicians a choice between two programs. Under the first option, Technicians could drive their personal vehicles from their homes to the Brink's office in Kent and pick up the Brink's trucks at the Kent office. Under this option, Brink's paid Technicians for the time spent driving the Brink's trucks from the Kent office to the first jobsite and from the last jobsite to the Kent office. Brink's did not pay them for the time spent commuting between their homes and the Kent office.
¶ 4 The second option  the subject of this litigation  allowed Technicians to keep the Brink's trucks at their homes and drive them directly to and from the first and last jobsites without stopping at the Kent office. Brink's named this option the home dispatch program (HDP). Technicians participating in the HDP received their daily job assignments through voice mail or handheld computers. Brink's generally compensated Technicians in the HDP for any drive time in excess of 45 minutes from Technicians' homes. Between September 2002 and January 2005, Brink's implemented an interim HDP policy, wherein Brink's paid Technicians for drive time to the first jobsite and from the last jobsite only if the site was located more than 45 minutes from both Technicians' homes and the Brink's office in Kent. If the particular drive qualified for compensation under this policy, Brink's paid Technicians only for drive time in excess of 45 minutes.
¶ 5 In November 2002, Technicians filed a class action in King County Superior Court. Technicians alleged in part that Brink's violated the MWA by failing to compensate Technicians for all drive time under the HDP. In September 2005, the trial court granted in part Technicians' motion for partial summary judgment, ruling that Brink's was liable for the drive time claim. Specifically, the trial court held that the time Technicians spent driving from home to the first jobsite and from the last jobsite back to their homes in company-issued trucks was work time under the MWA.
¶ 6 In January 2006, the trial court granted Technicians' second motion for partial summary judgment, concluding that the class members were entitled to prejudgment interest and any back pay damages awarded in the case. At trial, the jury awarded Technicians back pay damages for the drive time claims. The court awarded prejudgment and postjudgment interest at the rate of 12 percent per annum and also awarded attorney fees and costs. Brink's appealed and we granted Brink's' motion to transfer the case from Division One of the Court of Appeals.

ISSUES
¶ 7 A. Did the trial court err in holding that Brink's violated the MWA by failing to compensate for drive time?
¶ 8 B. Did the trial court err in awarding prejudgment interest?
¶ 9 C. Did the trial court err in fixing the prejudgment and postjudgment interest rate at 12 percent?
¶ 10 D. Are Technicians entitled to attorney fees and costs?

ANALYSIS
¶ 11 Standard of Review. On review of summary judgment, we engage in the same inquiry as the trial court and view the facts and all reasonable inferences in the light most favorable to the nonmoving party. Fairbanks v. J.B. McLoughlin Co., 131 Wash.2d 96, 101, 929 P.2d 433 (1997). "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Cerrillo v. Esparza, 158 Wash.2d 194, 200, 142 P.3d 155 (2006); accord CR 56(c).
A. Drive Time Compensation
¶ 12 Under the MWA, employees are entitled to compensation for regular hours worked and for any overtime hours worked. See RCW 49.46.020, .130; see also Bostain v. Food Express, Inc., 159 Wash.2d 700, 708-09, 153 P.3d 846 (2007) ("Subject to specific exemptions, the MWA requires employers to pay their employees . . . overtime pay for the hours they work over 40 hours per week."). This case requires us to determine whether *476 Technicians' drive time constitutes hours worked within the meaning of the MWA.
¶ 13 The legislature has not defined hours worked or addressed the compensability of employee travel time. Accordingly, WAC 296-126-002(8) governs the determination of whether drive time is compensable.[1] Under WAC 296-126-002(8), "`[h]ours worked' . . . mean[s] all hours during which the employee is authorized or required . . . to be on duty on the employer's premises or at a prescribed work place." "[W]here a regulation is clear and unambiguous, words . . . are given their plain and ordinary meaning unless a contrary intent appears." Silverstreak, Inc. v. Dep't of Labor & Indus., 159 Wash.2d 868, 881, 154 P.3d 891 (2007). Thus, to determine whether drive time is compensable, we must examine the undisputed facts and assess whether Technicians are "on duty" at the "employer's premises" or "prescribed work place" within the meaning of WAC 296-126-002(8).
¶ 14 In Anderson v. Department of Social & Health Services, 115 Wash.App. 452, 63 P.3d 134, review denied, 149 Wash.2d 1036, 75 P.3d 968 (2003), the Court of Appeals evaluated whether employee travel time was compensable under WAC 296-126-002(8). Id. at 456, 63 P.3d 134. Under the WAC standard, the court held that state employees who worked at the Special Commitment Center on McNeil Island were not entitled to compensation for time they spent traveling to work on the state/employer-provided ferry. Id. The employees were not "on duty" within the meaning of WAC 296-126-002(8) because "[d]uring passage, plaintiffs engage in various personal activities, such as reading, conversing, knitting, playing cards, playing hand-held video games, listening to CD (compact disc) players and radios, and napping. They perform no work during the passage." Id. at 454, 63 P.3d 134. The court also concluded that the employees were not on the Special Commitment Center's "premises" or "prescribed work place" during their commute for purposes of WAC 296-126-002(8). Id. at 456, 63 P.3d 134.
¶ 15 As in Anderson, we must evaluate the extent to which Brink's restricts Technicians' personal activities and controls Technicians' time to determine whether Technicians are "on duty" for purposes of WAC 296-126-002(8). Here, Brink's company policy strictly controls Technicians' use of the Brink's trucks, specifically mandating that they use the trucks "for company business only." Clerk's Papers (CP) at 74. To that end, Technicians may not carry non-Brink's employees as passengers in the trucks. Id. Company policy also requires Technicians to wear seat belts, obey traffic laws, not park haphazardly, lock the vehicle at all times, and never carry alcohol. Id. Unlike ordinary commuters who regularly run errands during their commutes and carry additional passengers, Brink's policy prohibits Technicians from engaging in personal activities while driving the Brink's trucks. See id. at 92 (explaining that Technicians cannot use the Brink's trucks for shopping). Further, in contrast to ordinary commuters and the state employees in Anderson, Technicians receive jobsite assignments at home via voice mail or handheld computer. Id. at 479-80, 484, 488, 494, 63 P.3d 134. They must spend time writing down the assignments and mapping the best route to reach their installation and service locations before beginning their drive. Id. In addition to the restrictions on Technicians' drive time, Technicians remain "on duty" during the drive. Supervisors may redirect Technicians under the HDP while en route to and from their homes to assist with other jobs or answer service calls. E.g., id. at 273, 281-82.
¶ 16 The undisputed facts establish that Technicians were "on duty" during the drive time for purposes of WAC 296-126-002(8). Technicians are performing company business during the drive time because Brink's strictly controls the drive time, prevents Technicians from using the trucks for personal business, and requires Technicians to *477 remain available to assist at other jobsites while en route to and from their homes. Thus, we must next determine whether the Brink's trucks constitute the employer's "prescribed work place" under the WAC definition of "hours worked."
¶ 17 Driving the trucks is an integral part of the work performed by Technicians. The nature of Brink's' business requires Technicians to drive the Brink's trucks to reach customers' homes and carry the tools and equipment necessary for servicing and installing home alarm systems. Technicians in the HDP report to the Kent office only once each week to refill supplies and attend the weekly company meeting. CP at 61 n. 1. In addition, the Brink's trucks serve as the location where Technicians often complete work-related paperwork because company policy dictates that employees must complete all paperwork either at the customer's home or in the Brink's truck. See id. at 668. Finally, like a work premises, Brink's requires employees in the HDP to "ensure that the vehicle is kept clean, organized, safe and serviced." Id. at 74. Based on these undisputed facts, we hold that the Brink's trucks constitute a "prescribed work place" under WAC 296-126-002(8).
¶ 18 We conclude that Technicians were "on duty" at a "prescribed work place" during the drive time and therefore entitled to compensation under the MWA for the hours worked. Accordingly, we affirm the trial court's grant of Technicians' motion for summary judgment on the drive time claims.
B. Award of Prejudgment Interest
¶ 19 Brink's contends that the trial court erred by awarding Technicians prejudgment interest for "all back wages . . . on unpaid hours worked." CP at 828. Courts award prejudgment interest when claims are liquidated. Hansen v. Rothaus, 107 Wash.2d 468, 472, 730 P.2d 662 (1986). A liquidated claim exists when "the amount of prejudgment interest can be determined from the evidence with exactness and without reliance on opinion or discretion." Bostain, 159 Wash.2d at 723, 153 P.3d 846 (citing Hansen, 107 Wash.2d at 472, 730 P.2d 662). "`A dispute over the claim, in whole or in part, does not change the character of a liquidated claim to unliquidated.'" Id. (quoting Hansen, 107 Wash.2d at 472, 730 P.2d 662). In Bostain, we affirmed the trial court's award of prejudgment interest when the plaintiffs submitted objective evidence of the overtime due and the basis for the calculations. See id.
¶ 20 Here, Brink's contends that the amount owed on the drive time claim required a jury to rely on opinion or discretion and was therefore unliquidated. At trial, the jury relied on an expert's testimony calculating drive times with the software program "Mappoint." Brink's contends this data was insufficient to constitute a liquidated claim entitled to prejudgment interest.
¶ 21 The Court of Appeals recently rejected a similar argument regarding unpaid overtime hours for employees improperly exempted under the MWA. McConnell v. Mothers Work, Inc., 131 Wash.App. 525, 536, 128 P.3d 128 (2006) ("Damages are liquidated if the evidence furnishes data that, if believed, made it possible to compute the amount owed with exactness."). In McConnell, the court determined that the overtime hours were liquidated because the overtime payments were "determinable by computation" based on the hours worked and the fixed hourly rate. Id. at 536, 128 P.3d 128. Similarly, the drive time payments in the instant case were determinable based on the drive times calculated with Mappoint and Technicians' actual wage rates. Because the jury did not have to rely on "opinion or discretion" to calculate the amount, we affirm the trial court's determination that the drive time claim was liquidated.
C. Prejudgment and Postjudgment Interest Rate
¶ 22 Brink's also challenges the trial court's prejudgment and postjudgment interest award at the rate of 12 percent as provided in RCW 19.52.020(1). Brink's contends that the trial court should have assessed the lower interest rate (two percent over the six-month treasury bill rate) provided in RCW 4.56.110(3), which applies to "[j]udgments founded on the tortious conduct of individuals *478 or other entities." This statute does not define "tortious conduct."
¶ 23 We have not addressed the question of whether violations of the MWA constitute "tortious conduct" for purposes of determining whether RCW 4.56.110(3) affects the interest rate on such judgments. We have, however, decided that MWA violations do not constitute "tortious conduct" in determining the appropriate statute of limitations. Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co., 139 Wash.2d 824, 838, 991 P.2d 1126, 1 P.3d 578 (2000) (SPEEA). In SPEEA, we held that MWA claims are more akin to unjust enrichment claims than to tort claims; "in instituting this action, the employees are in essence seeking recovery under an obligation imposed by law, and the WMWA, for Boeing's unjust enrichment (i.e., receiving the benefit of the employees' work without paying for the work.)." Id. We concluded that the employees' claims for the unpaid work were subject to the statute of limitations for implied contracts, not tortious conduct.
¶ 24 Technicians in the present case sought damages under the MWA, essentially claiming that Brink's was unjustly enriched by not paying them for hours worked. In accordance with SPEEA, we regard the nature of Technicians' claims as implied contracts, not tortious conduct. Because the judgment was not "founded on tortious conduct," we affirm the trial court's assessment of the 12 percent interest rate.
D. Attorney Fees and Costs
¶ 25 We affirm the trial court's order granting partial summary judgment for the drive time claim and the trial court's award of attorney fees and costs for that issue. In addition, we grant Technicians' request for attorney fees and costs incurred from this appeal under RAP 18.1, RCW 49.46.090(1) (requiring employer to pay reasonable attorney fees and costs when employer fails to pay the employee required wages), and RCW 49.48.030 (providing for attorney fees when employee successfully recovers judgment for wages and salary).

CONCLUSION
¶ 26 We affirm the trial court's rulings. Under the WAC definition of "hours worked," we conclude that Technicians were entitled to summary judgment on the drive time issue because the uncontested facts establish that Technicians in the HDP were "on duty" at a "prescribed work place" during the drive time. We also affirm the trial court's award of prejudgment interest, the prejudgment and postjudgment interest rate, and the award of attorney fees and costs. Finally, we award Technicians attorney fees and costs for their appeal.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justices TOM CHAMBERS, CHARLES W. JOHNSON, MARY E. FAIRHURST and BOBBE J. BRIDGE.
MADSEN, J. (concurring).
¶ 27 The majority determines that the drive time at issue is compensable under the Minimum Wage Act (MWA), chapter 49.46 RCW, by applying the definition of "hours worked" in WAC 296-126-002(8). But this results in a strained, ultimately unsatisfactory analysis where the interior of a company truck must be described as "premises" or "a prescribed work place." Because the Department of Labor and Industries has not only defined "hours worked" in the rule but has also issued a policy statement that explains in more detail how "hours worked" are to be determined in the specific context at issue here  travel in company vehicles  considering this policy makes more sense and yields a more reasonable analysis.
¶ 28 WAC 296-126-002(8) defines the term "hours worked" as "all hours during which the employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed work place." The first part of this definition presents no problem  the technicians are "on duty" at all times when they drive the trucks. This is because the company's written policy provides that during drive time the technicians drive the company vehicle subject to restrictions imposed by the company and they are subject to redirection by their supervisors to *479 assist with other jobs or to answer service calls while en route to and from their homes.
¶ 29 Applying the regulation's requirement that the technicians must be on duty "on the employer's premises or at a prescribed work place" is more problematic. Indeed, the majority's strained analysis shows the difficulty with trying to shoehorn a company truck into a rigid reading of "employer's premises" or "prescribed work place." I am unconvinced by this implausible literal application of the terse phrases in the regulation. But the fact that the definition produces an unsatisfactory analysis does not mean that travel in a company vehicle is not compensable. For example, if a technician picks up a company truck at the office and drives it to the first job assignment of the day, no one would dispute that this travel time constitutes "hours worked" for which the technician must be compensated. Likewise, the time spent by all technicians driving in company trucks from job assignments to job assignments throughout the day also qualifies as hours worked and without doubt is compensable travel time. Thus, some additional guidance is needed to satisfactorily deal with time spent traveling in a company vehicle.
¶ 30 Accordingly, the Department of Labor and Industries' explanation of the term "hours worked" in its Administrative Policy ES.C.2 is relevant. This policy, intended only as a guide, covers a wide variety of situations involving travel time. While having no force or effect as a law or regulation, the following section of this policy is persuasive in the context here as a well-reasoned interpretation of the "hours worked" term by the same agency that defined the term in WAC 296-126-002(8):
Time spent driving from home to the job site, from job site to job site, and from job site to home is considered work time when a vehicle is supplied by an employer for the mutual benefit of the employer and the worker to facilitate progress of the work. All travel that is an integral and indispensable function without which the employee could not perform his/her principal activity, is considered hours worked. Employment begins when the worker enters the vehicle and ends when the worker leaves it on the termination of that worker's labor for that shift.
Br. of Resp't's, App. C (Wash. Dep't of Labor & Indus., Employment Stds., Admin. Policy ES.C.2, at 2 (Jan.2002)).
¶ 31 An agency policy can be useful in determining the meaning of statutory terms. See generally, e.g., Stahl v. Delicor of Puget Sound, Inc., 148 Wash.2d 876, 886-87, 64 P.3d 10 (2003). They need not be promulgated with the formality of rule making but must represent a uniformly applied interpretation. See generally Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 815, 828 P.2d 549 (1992).
¶ 32 With the more detailed explanation provided in Administrative Policy ES.C.2, which is specifically geared to questions involving travel like the drive time at issue here, a better assessment can be made of the technicians' travel to jobsites from their homes and from jobsites to their homes using the company's vehicles. Further, it is an analysis that implicitly recognizes the indisputable fact that the technicians derive personal benefit from use of the company's vehicles  after all, use of the company's trucks can and has made it possible for technicians to avoid otherwise necessary expenditures involved in using private vehicles to commute.
¶ 33 The fact that a technician personally benefits does not preclude the conclusion that travel from and to the home is compensable time. Rather, the inquiry is one of mutual benefit vis-a-vis the job. In my view, the technicians' drive time meets the pertinent explanation of "hours worked" in the policy.
¶ 34 The technician is, of course, benefited by having the truck and equipment transported as needed so work can proceed. The employer also benefits because when a technician leaves his home for a customer's home, he or she is engaged in the transport of essential supplies for the jobs he does  an essential part of his work function. If the technician is on-call, he or she also has access to supplies in another truck at another technician's home, which may be closer than the company's branch office. The company has *480 the ability to assign technicians traveling homeward to a late service call or to a jobsite where another technician needs assistance to finish a job in progress. The trucks are emblazoned with Brink's name and a 1-800 telephone number, which advertises for the company, and the additional travel time and traveling distance from home to the first jobsite and from the last jobsite homeward provides additional time and place for dissemination of this advertising. The evidence in the record also shows that parking at the company's Kent facility is limited, and the home dispatch option relieves the company of the problem of finding adequate parking should all of the technicians commute in personal vehicles. All of these benefits facilitate the work performed, in both a job-specific as well as, insofar as the company is concerned, a more global sense.
¶ 35 Use of the company's truck to travel from and to the home inures to the mutual benefit of the employer and the worker to facilitate progress of the work, as contemplated under the policy.
¶ 36 Under this analysis, I agree with the result reached by the majority.
WE CONCUR: Justice MARY E. FAIRHURST.
SANDERS, J. (dissenting).
¶ 37 The majority holds where an employee is given a company vehicle for the purpose of commuting to the first jobsite of the day, and from the last jobsite of the day, the time spent commuting is time worked for the purposes of Washington's Minimum Wage Act (MWA), chapter 49.46 RCW. The issue here is limited solely to the compensability of time spent commuting and not for time spent on other uncompensated work activities.[1] In addition, the technicians do not claim they are entitled to wages for time spent commuting in the same vehicles to or from the employer's premises. Br. of Resp'ts at 5-6.
¶ 38 The majority asserts employees are either on the employer's premises or in a prescribed workplace while driving the company vehicle. I disagree. A vehicle used to transport an employee to a jobsite is neither part of the employer's premises nor a prescribed workplace under the ordinary meaning of these words as used in WAC 296-126-002(8).
¶ 39 The MWA requires employers to pay employees for all hours worked by the employee. See generally ch. 49.46 RCW. The Department of Labor and Industries has promulgated a regulation defining "`[h]ours worked'" for purposes of compensation as "all hours during which the employee is authorized or required . . . to be on duty on the employer's premises or at a prescribed work place." WAC 296-126-002(8). I agree with the majority that this regulation is clear and unambiguous and therefore the words in the regulation must be given "`their plain and ordinary meaning.'" Majority at 476 (quoting Silverstreak v. Dep't of Labor & Indus., 159 Wash.2d 868, 881, 154 P.3d 891 (2007)). The question then becomes whether a company vehicle used by a technician to commute constitutes "the employer's premises or . . . a prescribed work place." WAC 296-126-002(8).
¶ 40 A vehicle used for commuting to a jobsite cannot be in itself "employer's premises." "[P]remises" are "a specified piece or tract of land with the structures on it." Webster's Third New International Dictionary 1789 (2002). A vehicle is neither land nor a building and, therefore, cannot be the "employer's premises."
¶ 41 Likewise, a vehicle used by a technician to commute is not a "prescribed workplace" by the ordinary meaning of that phrase. A "workplace" is simply a setting in which an employee performs his principal work at the behest of the employer. See Webster's, supra, at 2635 (defining "workplace" as "a place (as a shop or factory) where work is done"). Here, the technicians' principal work consists of installing and repairing alarm systems in customers' homes. Hence, this work is done only at the homes of the customers and not while commuting. Because no work is done during the commute, *481 the vehicle cannot be a "prescribed workplace" during that period.[2]
¶ 42 The majority claims three factors support its holding that a technician's vehicle is in fact a workplace during the commute. First, the vehicle is necessary "to reach customers' homes and carry the tools and equipment necessary for servicing and installing home alarm systems." Majority at 477. Second, the technicians periodically use the truck to complete paperwork. Clerk's Papers (CP) at 668. Last, Brink's requires that the technicians keep the vehicle "`clean, organized, safe and serviced.'" Majority at 477 (quoting CP at 74). But none of these factors changes the nature of the vehicle from a mode of transportation to a workplace.
¶ 43 The first and third of the majority's factors fail to address the essence of the phrase "workplace," namely, the location of the work performed. Although it is true that a vehicle is necessary to carry the technician and his tools to the home of the customer, the same could also be true of any commute to an employer's premises or a workplace in the employees' own vehicles. Similarly, the requirement to keep the vehicle clean during the commute does not make the vehicle into a workplace, much like a dress code which requires an employee to be clean fails to transform the employee into a workplace.
¶ 44 The facts of this case demonstrate the absurdity of following the majority's claim that company trucks are workplaces to its logical conclusion. Here, the technicians routinely commute in the company truck from their home to the Brink's office for meetings. CP at 276. Brink's does not compensate technicians for this commute, stating "[p]ayment of drive times between the branch and residence as the initial or final work location is never payable, as we do not pay drive time for anyone who works in the branch." CP at 71. Brink's readopted this policy twice and included this restriction. CP at 72-73. Not even the technicians claim they are "on the clock" for this commute, indicating they have "no dispute that drive time from home to the office is not compensable." Br. of Resp'ts at 5-6. Yet, under the majority's analysis, if a company truck is a workplace, even a commute to the employer's office would require compensation because the use or payload of the truck does not change based on its destination. As absurd as reimbursing employees for the commute to the employer's office seems, it flows inescapably from the majority's holding a company provided truck is a workplace.
¶ 45 The majority may be correct in asserting that if a technician performs his principal work in the truck, the truck is a workplace. However, this transformation lasts only as long as the employee actively performs this work within the vehicle. But here the technicians do not claim they were unpaid for any of these periods. The claim was restricted only to time spent commuting to, and home from, the customers' homes. As such, the truck was not a workplace for any of the periods claimed in this action.
¶ 46 The ordinary meaning of workplace precludes finding a vehicle used to commute is itself a workplace. The technicians have failed to produce evidence that any work was done while commuting to the first customer's home, and so the vehicle could not be a workplace during that time. Since the vehicle is not a workplace, the hours commuting were not hours worked.
¶ 47 I dissent.
WE CONCUR: Justice JAMES M. JOHNSON.
NOTES
[1] Both parties and amici curiae agree that WAC 296-126-002(8) is the appropriate standard. See Br. of Appellant at 18-19; Br. of Resp'ts at 25-26; Br. of Amici at 7-8, 17. Although the parties alternatively propose several standards for assessing whether Technicians' drive time is compensable, resort to these alternative standards is unnecessary in this case because the Department of Labor and Industries formally defined "hours worked" in WAC 296-126-002(8).
[1] In addition to the commuting claim, the technicians were also awarded damages based on work performed, such as phone calls, cleaning the truck, and receiving assignments. See Br. of Appellant at 5-6. This award was not appealed.
[2] Other courts interpreting federal and state wage regulations have similarly agreed that commuting is not work, even where tools are transported in the process. See Reich v. N.Y. City Transit Auth., 45 F.3d 646, 651 (2d Cir.1995) (holding that "the activity of commuting involved neither exertion nor loss of time" and was therefore not work, at least where the "commuting time was not substantially increased" by carrying tools to the jobsite); Vega ex rel. Trevino v. Gasper, 36 F.3d 417 (5th Cir.1994); Dooley v. Liberty Mut. Ins. Co., 307 F.Supp.2d 234 (D.Mass.2004); Ladegaard v. Hard Rock Concrete Cutters, Inc., 150 Lab. Cas. (CCH) P34,880, 2004 WL 1459486, 2004 U.S. Dist. LEXIS 16288 (N.D.Ill.2004) (interpreting the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. Ann. 105/1); Leverette v. Labor Works Int'l, LLC, 636 S.E.2d 258 (N.C.Ct.App. 2006) (interpreting the North Carolina Wage and Hour Act, N.C. Gen.Stat. § 95-25.1).