

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-21-2008

# Lenahan v. Sears Roebuck & Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3837

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Lenahan v. Sears Roebuck & Co" (2008). *2008 Decisions.* Paper 1559.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1559

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-3837

SHAWN LENAHAN; JOSEPH KAPCSOS, On Behalf of
Themselves and All Others Similarly Situated;

v.

SEARS, ROEBUCK AND CO.

DEAN WINTER; VERN SAILAND; BERNALDO MORA; TEHRON HARMISON,
Appellants

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 02-cv-00045)
District Judge:  The Honorable Stanley R. Chesler

Submitted Under Third Circuit LAR 34.1(a)
January 14, 2008

Before: BARRY, CHAGARES and ROTH, <u>Circuit Judges</u>

(Opinion Filed: February 21, 2008)

OPINION

BARRY, <u>Circuit Judge</u>

This appeal concerns the settlement of a nationwide class action filed on behalf of

field service technicians against their employer, Sears Roebuck & Co. ("Sears"), for the alleged failure to pay wages in connection with Sears' home dispatch program ("HDP"). Following a hearing, the District Court gave final approval to the settlement on July 24, 2006. Appellants (the "*Winter* Objectors") are putative class members who claim that the District Court erred in certifying the settlement class and finding that the settlement is fair, reasonable and adequate. We will affirm.

## I.

Because we write only for the parties, familiarity with the facts is presumed, and we include only those facts that are relevant to our analysis.

Sears implemented the HDP in November 2001 to increase the amount of time that technicians spend at customers' homes servicing Sears appliances. Under the HDP, rather than beginning and ending their work days at a dispatch center, technicians drove their Sears van (which they kept at home) from home to the first job of the day, and from the last job of the day to home. They were not paid for their drive time before the first job or after the last job unless the drive exceeded 35 minutes. Nor were they paid for the time it took them to log onto a computer in the morning to receive their daily assignments, load boxes of replacement parts into their van, or complete other minor tasks. According to Sears, participation in the HDP was voluntary.

As a result of implementing the HDP, between January 2002 and October 2005, four putative class actions were filed against Sears in federal and state courts on behalf of

2

technicians claiming that the drive time before the day's first job and after the day's last job was not merely commute time, but compensable work time. They also claimed that the activities performed at home were substantial work-related tasks that required compensation. The four actions were: (1) *Lenahan v. Sears, Roebuck & Co.*, No. 02-00045, filed on January 2, 2002 in the District Court for the District of New Jersey (asserting class claims on behalf of New Jersey technicians under New Jersey's state wage and hour law and collective claims on behalf of technicians nationwide under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA")); (2) *Caiarelli v. Sears, Roebuck & Co.*, No. GD 03-001735, filed on January 4, 2003 in Pennsylvania state court (asserting class claims on behalf of Pennsylvania technicians under Pennsylvania's wage and hour law); (3) *DeSoto v. Sears Roebuck & Co.*, No. RG 03-096692, filed on May 15, 2003 in California state court (asserting class claims on behalf of California technicians under California's wage and hour law); and (4) *Winter v. Sears, Roebuck & Co.*, No. 05-2-33313-8 MCH, filed on October 7, 2005 in Washington state court (asserting class claims on behalf of Washington technicians under Washington's wage and hour law).

In January 2005, following more than a year of settlement negotiations, Sears reached an agreement in principle with plaintiffs' counsel in two of the pending actions, *Lenahan* and *DeSoto*, for a nationwide settlement. Over the next several months, a settlement agreement was negotiated, and a final draft was executed on October 19, 2005. Under the proposed settlement, Sears agreed to pay $15 million dollars to settle all claims

3

nationwide. Plaintiffs' counsel in *Lenahan* and *Desoto* agreed to share the role of class counsel and, pursuant to the terms of the proposed settlement, filed an amended complaint alleging violations of the FLSA and the wage and hour laws of those states that have such laws. Class members were divided into three subclasses. Class One consisted of technicians from New Jersey, Pennsylvania, California and Washington. Class Two consisted of technicians from other states that had an applicable wage and hour law. Class Three included technicians from states that had no applicable wage and hour law. Technicians from Class One received 150% of the recovery of technicians in Classes Two and Three, owing to the relative strength of their claims and the existence of pending litigation in those states.

The District Court preliminarily approved the settlement on November 10, 2005. Notice of the proposed settlement was mailed to 16,252 class members on January 13, 2006. 7,632 class members filed claims seeking payment under the settlement. 190 class members, 150 of whom were *Caiarelli* plaintiffs, opted out. Only six class members filed objections to the proposed settlement, four of whom were the *Winter* Objectors, the named plaintiffs in the *Winter* action.

On May 12, 2006, the District Court held a hearing to consider the objections and determine whether to grant final approval to the settlement. At the hearing, the *Winter* Objectors argued that the claims of Washington class members were stronger than those of other class members owing to unique characteristics of Washington law. Therefore,

they claimed, class certification was not proper and the settlement was not fair as to Washington class members. The District Court disagreed, finding that there was "little about Washington state law at this time that enables this Court to conclude that the Washington Class claims are so much stronger than the rest of the Class sufficient to justify even the modest bump in recovery that they receive under the Proposed Settlement." (JA 43.) On July 24, 2006, the District Court certified the class and granted final approval to the settlement. The *Winter* Objectors filed a timely notice of appeal, claiming that the District Court erred in (1) certifying the class, and (2) finding that the settlement was fair, reasonable and adequate with respect to Washington class members.

**II.**

We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review the decision of the District Court to certify the class and approve the settlement under an abuse of discretion standard." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004). "An appellate court may find an abuse of discretion where the 'district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *In re Prudential Ins. Co. America Sales Practice Litig.*, 148 F.3d 283, 299 (3d Cir. 1998) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir. 1995)).

**III.**

<u>A. The Relative Strength Of Washington Law</u>

The thrust of the *Winter* Objectors' argument is that Washington class members' claims are stronger than those of other class members because Washington law is more favorable than federal law and other states' law. They claim that although Washington wage and hour law generally follows the FLSA, Washington has not adopted the Portal to Portal Act of 1947, 29 U.S.C. § 251, *et seq.*, or the Employee Commuting Flexibility Act of 1996, Pub. L. 104-188, § 2102, 110 Stat. 1755, 1928 (1996) ("ECFA"), both of which provide Sears with strong defenses. According to the *Winter* Objectors, Washington class members' strong claims under Washington law were unfairly discounted by being settled together with relatively weaker claims, under federal and state law, that are subject to defenses under the Portal to Portal Act and the ECFA. Citing two unpublished Washington state trial court decisions, *Stevens v. Brink's Home Sec., Inc.*, No. 02-2-32464-9 (King County Super. Ct. Sept. 13, 2005), and *Crow v. Northwest Transp., Inc.*, No 03-2-35135-1 (King County Super. Ct. Dec. 15, 2005), and an administrative guideline informally promulgated by Washington's Department of Labor and Industries ("DLI"), they argue that Washington law would likely permit recovery here, while states following the Portal to Portal Act and the ECFA would not.

The District Court rejected this argument, observing that the Washington Supreme Court had not ruled on the compensability of travel time under these circumstances, and

6

that the only relevant published decision, *Anderson v. State of Washington*, 63 P.3d 134 (Wash. Ct. App. 2003), suggested that Washington followed the general rule that commute time is not compensable. The District Court distinguished *Brink's* and *Crow* on the ground that, in those cases, the Washington trial court explicitly found that the home dispatch program placed significant restrictions on the drivers during drive time, whereas "[d]uring this litigation, Sears has contended that the HDP was voluntary and contained minimal restrictions on the Technicians' use of the vehicles during the commute periods." (JA 43.) Finally, the District Court found that, because the DLI guideline was informally promulgated, it was non-binding and thus entitled to little deference.

We agree with the District Court that *Brink's* and *Crow* appear to be driven, at least in part, by the explicit finding that the employer exercised significant control over the employee during drive time. While this appeal was pending, the Washington Supreme Court affirmed the trial court's ruling in *Brink's*. *See Stevens v. Brink's Home Sec., Inc.*, 169 P.3d 473 (Wash. 2007). Tellingly, the court's "on duty" analysis focused almost exclusively on the extent to which the employer exercised control over the employee during drive time. *See id.* at 476 ("[W]e must evaluate the extent to which Brink's restricts Technicians' personal activities and controls Technicians' time to determine whether Technicians are 'on duty'...."); *id.* ("Unlike ordinary commuters who regularly run errands during their commutes and carry additional passengers, Brink's policy prohibits Technicians from engaging in personal activities while driving the

7

Brink's trucks."); *id.* ("In addition to the restrictions on Technicians' drive time, Technicians remain 'on duty' during the drive. Supervisors may redirect Technicians under the HDP while en route to and from their homes to assist with other jobs or answer service calls.").

The District Court found that there was a legitimate dispute concerning the extent of Sears' control during drive time, and we cannot say that this finding was clearly erroneous. The *Winter* Objectors argue that there is little evidence that Sears did not exercise control during drive time. However, even assuming that that is true, there also is little evidence that Sears *did* exercise control. That is, based on our review of the record, it would have been difficult for the District Court to find – as the *Brink's* and *Crow* courts found – that Sears placed significant restrictions on drivers during drive time. Absent a finding that Sears exercised significant control, Washington class members do not appear to have strong claims under Washington law.[1]

Washington class members were included in Class One and therefore, for purposes of analyzing the relative strength of their claims, the proper comparison is with other members of Class One. California class members were also included in Class One. Washington law and California law appear to be similar, as both focus on the element of

---

[1] We also agree with the District Court that the DLI guideline was non-binding and entitled to little deference. Moreover, the Washington Supreme Court's analysis in *Brink's*, which focused extensively on employer control (and did not even acknowledge the guideline), casts doubt on the extent to which the guideline accurately reflects Washington law.

employer control during drive time.  *Compare Brink's*, 169 P.3d at 476 ("[W]e must

evaluate the extent to which Brink's restricts Technicians' personal activities and controls

Technicians' time to determine whether Technicians are 'on duty'....") *with Morillion v.*

*Royal Packing Co.*, 995 P.2d 139, 146 (Cal. 2000) ("The level of the employer's control

over its employees [while traveling to work], rather than the mere fact that the employer

requires the employees' activity, is determinative.").  Accordingly, even if Washington

law is somewhat favorable relative to other states' law, it does not appear to be more

favorable than California law, and we take comfort in the fact that class members from

both states are treated identically under the settlement.[2]

We agree with the District Court that Washington class members' claims are not

significantly stronger than those of other class members.  Even assuming their claims are

slightly stronger than the claims of some non-Washington class members, this factor is

adequately taken into account by their inclusion in Class One, where they receive a 50%

premium.

   B.  The District Court's Decision To Certify The Class.

Certification of a settlement class is only appropriate if the class meets the

---

[2]  There is no reason to believe (and the *Winter* Objectors do not allege) that the settlement is unfair as to California class members, as plaintiffs' counsel in *DeSoto* serves as class counsel and was involved in the arm's length negotiation of the settlement. Assuming the settlement is fair as to California class members, the obvious implication is that it also must be fair as to Washington class members, given that both states have similar laws, class members from those states press the same claims, and class members from those states are compensated identically under the settlement.

requirements of Federal Rule of Civil Procedure 23.  Under Rule 23(a), class representatives and class counsel must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The *Winter* Objectors argue that, because Washington class members' claims are stronger than those of other class members, the settlement class fails to meet those requirements and therefore the class should not have been certified.

In light of our finding that Washington class members's claims are not stronger than those of other class members, these claims necessarily fail.  Even assuming that Washington class members' claims are slightly stronger than some non-Washington class members' claims, their inclusion in Class One, where they received a 50% premium, allays any concerns about the class' ability to satisfy the requirements of Rule 23.

C.  The District Court's Finding That The Settlement Is Fair, Reasonable and Adequate.

The fairness of the settlement is determined by consideration of the nine factors articulated in *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975).[3]  The District Court

_____

[3]  The nine factors include:  "(1) the complexity, expense and likely duration of the litigation"; "(2) the reaction of the class to the settlement"; "(3) the stage of the proceedings and the amount of discovery completed"; "(4) the risks of establishing liability"; "(5) the risks of establishing damages"; "(6) the risks of maintaining the class

properly considered each of those factors and found the settlement to be fair, reasonable and adequate. The *Winter* Objectors argue that the District Court erred in its *Girsh* analysis. Although we could address each factor separately, we need not do so because at bottom the *Winter* Objectors' criticisms concerning the District Court's analysis are premised on their belief that Washington class members' claims are stronger than those of other class members. Given our finding to the contrary, their argument concerning the fairness of the settlement necessarily fails. And again, even assuming that Washington class members' claims are slightly stronger than some non-Washington class members' claims, the 50% premium adequately compensates them for any such advantage.

**IV.**

In light of the foregoing, we hold that the District Court did not abuse its discretion in certifying the settlement class and finding the settlement to be fair, reasonable and adequate as to Washington class members. Accordingly, we will affirm.

---

action through the trial"; "(7) the ability of the defendants to withstand a greater judgment"; "(8) the range of reasonableness of the settlement fund in light of the best possible recovery"; and "(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 157.

11