[No. 37272-0-II.   Division Two.   May 19, 2009.]

SAVE COLUMBIA CU COMMITTEE ET AL., *Appellants*, v. COLUMBIA COMMUNITY CREDIT UNION ET AL., *Respondents*.

---

*Douglas A. Schafer* (of *Schafer Law Firm*) and *Peggy Hennessy* (of *Reeves Kahn & Hennessy*), for appellants.

*Heather K. Cavanaugh* (of *Miller Nash, LLP*); *John F. Neupert*; *Robert M. McKenna, Attorney General*, and *Charles E. Clark* and *Heather L. Polz, Assistants*, for respondents.

¶1 PENOYAR, A.C.J. — Five expelled members of Columbia Community Credit Union filed suit against Columbia's board of directors, seeking a declaratory judgment that they were wrongfully expelled. They also sued the Washington State Department of Financial Institutions (DFI) for failing to pursue an enforcement action against Columbia to prevent their expulsions. The trial court dismissed all claims on either CR 12(b)(6) grounds or on summary judgment. We affirm the trial court's dismissal.

## FACTS

### I. BACKGROUND

¶2 Columbia is a state-chartered credit union under chapter 31.12 RCW. Columbia is governed by the Washington State Credit Union Act (WCUA), chapter 31.12 RCW, and regulated primarily by the DFI, Division of Credit Unions (DCU). Appellants Cathryn Chudy and Kathryn Edgecomb were members of Columbia's board of directors until 2006. Appellant Lloyd Marbet served on Columbia's

supervisory committee until 2006.[1] Appellant Robert Tice was a member of Columbia. All appellants were members of Save Columbia CU Committee (Save CCU), a nonprofit corporation formed by Columbia members who opposed Columbia's proposed conversion into a mutual savings bank. Save CCU was also a member of Columbia.

¶3 In recent years, disagreement arose between Columbia's nine member board on issues of corporate governance. Much of the disagreement arose concerning Columbia's desired conversion into a mutual savings bank. On March 16, 2004, Save CCU, Tice, and several other Columbia members sued Columbia because of governance issues. On May 14, 2006, Save CCU placed an ad in *The Columbian*, Vancouver's daily newspaper, urging readers to run for election to Columbia's board of directors and supervisory committee. The ad arguably disparaged Columbia's existing board.[2]

## II. July 22, 2006, Special Membership Meeting

¶4 In late June 2006, the four member supervisory committee voted, under RCW 31.12.195(1), to call a special membership meeting to vote on three questions related to

---

[1] Those elected to office in Columbia, either on the board or the supervisory committee, are called "volunteers."

[2] The ad read, in part:

In an attempt to control the outcome of the upcoming election, Columbia's majority Board of Directors has removed key Bylaw provisions within the last several months; namely, those provisions requiring impartial elections and voter's pamphlet statements. These changes significantly alter Columbia's election process. Unlike elections held in 2004 and 2005, candidate statements are not permitted in Columbia's 2006 voters' pamphlet.
DENYING CREDIT UNION MEMBERS THE OPPORTUNITY TO USE CANDIDATE STATEMENTS IN MAKING INFORMED DECISIONS WHEN THEY VOTE IS AGAINST THE PRINCIPLES OF DEMOCRACY.
AN ELECTION IS MORE THAN JUST NAMES ON A BALLOT. IT SHOULD PROVIDE FOR CANDIDATES' POSITIONS ON THE ISSUES AND THEIR VISION FOR THE FUTURE.
If you agree with Save CCU, please make a difference and run for a Board or Supervisory Committee position at Columbia Credit Union. Application packets are available at any Columbia Credit Union branch and must be returned by May 22, 2006.

Clerk's Papers at 9.

the election.[3] Two days before the membership meeting, Columbia's board (Board) met and amended several of Columbia's bylaws. A majority of the Board voted to provide that at special membership meetings, any procedural rules the Board adopts supersede *Robert's Rules of Order*. The Board then adopted rules for the special meeting permitting members to arrive at the meeting site anytime before 3:00 PM to cast a ballot on the questions.[4]

¶5 Notices for the July 22, 2006, meeting were sent to members on or about July 10, 2006, so the extension of voting time the Board approved on July 20 was not disseminated to all Columbia members. Ultimately, the majority vote, for all three questions, was "no." Clerk's Papers (CP) at 11.

¶6 Save CCU's counsel, and Chudy, wrote to DFI to complain about the Board's change of bylaws two days before the July 22 membership meeting. DFI's DCU director, Linda Jekel, responded, by letter, that after reviewing the WCUA and Columbia's bylaws, "[t]he changes to the bylaws appear appropriate and reasonable to the circumstances of this Special Meeting and well within the authority of the Board." CP at 105.

III. INITIAL EXPULSION FROM MEMBERSHIP

¶7 At a special board meeting on August 15, 2006, the majority of the Board amended its bylaws defining "for cause," used when determining whether a member should be expelled. CP at 12. The amended definition allowed for a member's immediate "for cause" expulsion from Columbia for "any other reason which in the opinion of the Board members voting for the expulsion agree is inimical to the best interests of the Credit Union." CP at 12.

---

[3] In short, the questions were (1) Should candidates be permitted to submit 500 word statements? (2) Should Columbia be prohibited from endorsing and promoting candidates? (3) Should Columbia officials be prohibited from expending Columbia's funds to promote their preferred candidates?

[4] The special membership meeting was scheduled to begin at 10:00 AM on July 22, 2006. Apparently, allowing voting until 3:00 PM was an extension of the original voting time.

¶8 Next, the Board expelled two board members, Chudy and Edgecomb, and supervisory committee member Marbet, from membership in Columbia "for cause." The notices of expulsion for each plaintiff detailed specific reasons for the expulsion. The basis for the "inimical-to-Columbia" finding in the appellants' expulsion notices were Save CCU's placement of the newspaper advertisement, the supervisory committee's calling of a special meeting, and the 2004 lawsuit. Additionally, the Board found that appellants breached their duty of loyalty and caused Columbia to suffer a loss by engaging in such conduct and by causing or contributing to member withdrawals. Because membership is a requirement for holding elective office, on both the board and the supervisory committee, appellants were removed from those volunteer positions when expelled from membership.

¶9 Appellants commenced this action against Columbia and DFI on September 8, 2006, for wrongful expulsion and failure to bring an enforcement action against Columbia. Appellants sought a preliminary injunction to restore Chudy, Edgecomb, and Marbet to their various offices and to restore Tice and Save CCU as members. After hearing oral argument, the trial court entered an order, on October 5, 2006, granting a preliminary injunction in which it restored Chudy, Edgecomb, and Marbet to membership and to their various elective offices within Columbia.

¶10 The trial court found that Columbia's board improperly expelled Chudy, Edgecomb, and Marbet because elected officials cannot be removed from their positions for the same "for cause" as used when expelling members. The trial court noted, however, that the Board could still expel the three from membership, but only if it first suspended their elective office under RCW 31.12.285.[5] All three immediately resumed their former volunteer positions.

---

[5] RCW 31.12.285 states:

The board may suspend for cause a member of the board or a member of the supervisory committee until a membership meeting is held. The membership

## IV. Second Expulsion Proceedings

¶11 On October 16, 2006, in response to the trial court order, the Board voted to suspend Chudy and Edgecomb from the Board and to suspend Marbet from the supervisory committee. Accordingly, the Board scheduled a special membership meeting for November 15, 2006, to vote on whether the members should direct the Board to expel Chudy, Edgecomb, and Marbet from membership.

¶12 At the special membership meeting, Columbia members cast approximately 1,200 ballots. Approximately 900 of those ballots were marked to remove Chudy, Edgecomb, and Marbet from elective office and expel them from membership.

## V. Trial Court Dismissal of Claims

¶13 On February 20, 2007, Columbia moved for summary judgment on the grounds, among others, Chudy, Edgecomb, and Marbet's claims were moot because Columbia's members properly expelled them and because Save CCU and Tice had failed to state a claim for relief.[6] DFI moved for summary judgment, arguing that appellants had failed to state allegations sufficient to constitute arbitrary and capricious action on its behalf.

¶14 At a subsequent hearing on April 6, 2007, the trial court dismissed the action against DFI, finding that appellants' allegations were insufficient to constitute arbitrary and capricious action as DFI had no duty to bring enforcement actions against Columbia for any of the special meetings or the appellants' expulsion. At the same hearing, the trial court deferred its decision on Columbia's motion

---

meeting must be held within thirty days after the suspension. The members attending the meeting shall vote whether to remove a suspended party. For purposes of this section, "cause" includes demonstrated financial irresponsibility, a breach of fiduciary duty to the credit union, or activities which, in the judgment of the board, threaten the safety and soundness of the credit union.

[6] Appellants' claims revolved around their alleged wrongful expulsion as Columbia's members.

and allowed appellants an opportunity to prepare a one-page explanation describing the legal basis for their claim.[7]

¶15 The trial court eventually denied Columbia's motion on June 19, 2007, and permitted appellants to amend their complaint to allege the wrongfulness of Columbia's actions taken against them in October and November 2006. One month later, on July 20, Columbia filed a motion to dismiss all claims under CR 12(b)(6) for failing to state a claim on which relief could be granted or, alternatively, for summary judgment on all issues. Additionally, Columbia urged the trial court to dismiss the claims of wrongful suspension and removal from office, arguing that (1) Chudy and Edgecomb failed to join necessary parties and (2) Marbet's claim was moot because his term in office would have expired after Columbia's 2006 annual membership meeting. On December 20, 2007, the trial court granted Columbia's motion for summary judgment and motion to dismiss on the issue of appellants' wrongful suspension and expulsion, and its motion to dismiss for issues related to the July and November 2006 special membership meetings.

¶16 Chudy, Edgecomb, Marbet, Tice, and Save CCU appeal the trial court's orders dismissing their claims against DFI and Columbia.

## ANALYSIS

### WRONGFUL SUSPENSION AND REMOVAL CLAIMS OF CHUDY, EDGECOMB, AND MARBET

¶17 Chudy, Edgecomb, and Marbet argue that Columbia did not have statutory "cause" to suspend them from their elective offices, which led to the membership meeting where they were expelled from their elective offices and member-

---

[7] When the trial court asked what was the legal basis, specifically, for their lawsuit, appellants' counsel replied, "egregious unfairness." Report of Proceedings (RP) (Apr. 6, 2007) at 60. When the trial court pointed out that "there is no cause of action for egregious unfairness," counsel insisted that "egregious unfairness is unlawful." RP (Apr. 6, 2007) at 60. After much colloquy, the trial court asked counsel to prepare a one-page pleading containing the specific cause of action.

ship. Columbia asserts the trial court correctly granted summary judgment. We affirm the trial court's decision.

¶18 We review summary judgment orders de novo, engaging in the same inquiry as the trial court, by viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Stevens v. Brink's Home Sec., Inc.*, 162 Wn.2d 42, 46-47, 169 P.3d 473 (2007); *Jones v. Pers. Res. Bd.*, 134 Wn. App. 560, 566, 140 P.3d 636 (2006). " 'Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.' " *Stevens*, 162 Wn.2d at 47 (quoting *Cerrillo v. Esparza*, 158 Wn.2d 194, 200, 142 P.3d 155 (2006)).

¶19 The Board suspended appellants on the bases recited in the original expulsion notices sent in August 2006. Namely, the Board determined that Chudy and Edgecomb breached their duty of loyalty to Columbia by (1) failing to raise Save CCU's concerns of Columbia at a Save CCU meeting where Save CCU decided to publish the "misleading, disparaging" advertisement in *The Columbian* and (2) causing damage to the "goodwill and reputation" of Columbia by causing a lawsuit to be filed against Columbia seeking access to documents the Board, DFI, and independent counsel had previously determined they could not have access to. CP at 120. Further, the Board found that Chudy and Edgecomb engaged in (3) conduct "inimical" to Columbia's best interest through "unreasonably disruptive" behavior and by "fostering divisiveness" among Columbia volunteers and members. CP at 121. Finally, the Board found that each had (4) "caused Columbia to suffer a loss in that by engaging in the foregoing [they have] caused or contributed to member withdrawals from the credit union." CP at 121.

¶20 The Board also suspended Marbet on bases discussed in his August expulsion notice. In addition to items (1), (3), and (4) that we mentioned in the preceding paragraph, the Board determined that Marbet acted "contrary to law and caused Columbia to suffer a loss by

[(1)] inducing and causing the Supervisory Committee to demand a Special meeting of members" on a matter that the Board had made an informed decision about; (2) wrongly implying in its call to members that the safety and soundness of the credit union was at stake; and (3) calling the meeting without first attempting to resolve the issues through other means, such as consulting with the Board. The Board further found that Marbet improperly induced and caused the supervisory committee to "play a role not proper or appropriate" for the supervisory committee to play. CP at 133. On this issue, there are no genuine issues of material fact. The parties disagree on whether the reasons given for suspension satisfy the statutory requirement for "cause," as outlined in RCW 31.12.285. Because this is a question of law, not fact, this was an appropriate question for the trial court and also for us.

¶21 Under RCW 31.12.285:

> The board may suspend for cause a member of the board or a member of the supervisory committee until a membership meeting is held. The membership meeting must be held within thirty days after the suspension. The members attending the meeting shall vote whether to remove a suspended party. For purposes of this section, "cause" includes demonstrated financial irresponsibility, a breach of fiduciary duty to the credit union, or activities which, in the judgment of the board, threaten the safety and soundness of the credit union.

¶22 Appellants argue that the reasons the Board gave for suspending appellants were not "cause" under RCW 31.12.285. Specifically, they argue that the reasons listed in the notice of expulsion were clearly not "financial irresponsibility" or a threat to "safety and soundness" and that the facts do not support the only reason given: "breach of fiduciary duty." Appellants' Br. at 21. This argument ignores that the statutory definition of "unsafe or unsound condition" is not exclusive.[8] More importantly, this argu-

---

[8] An "unsafe or unsound condition" "means, but is not limited to" where (1) the credit union is insolvent, (2) the credit union has incurred or is likely to incur

ment ignores that "cause" as listed in RCW 31.12.285 is within the Board's discretion as the statute contains a list of reasons that are expressly nonexclusive ("includes"). The Board was free to denominate other "cause" for expulsion, and we will not substitute our judgment for the Board's in determining whether "cause" as defined and found by the Board was an appropriate reason for expulsion where, as here, the definition of "cause" and the findings the Board approved appear rationally related to legitimate credit union interests, such as retention of members.

¶23 Appellants do not challenge the truthfulness of the reasons given for expulsion, and so we take them as true. Under the nonexclusive list of reasons for suspension "for cause," any and all of the reasons given for appellants' suspension are sufficient under the law. The Board acted within the scope of its authority. Even taking the facts in the light most favorable to appellants, there is no genuine issue of material fact and Columbia is entitled to judgment as a matter of law. We affirm the trial court's ruling.

¶24 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON and QUINN-BRINTNALL, JJ., concur.

Review denied at 167 Wn.2d 1002 (2009).

---

losses that will deplete all or much of its net worth, and (3) the credit union is in imminent danger of losing its share and deposit insurance or guarantee. RCW 31.12.005(23). An "unsafe or unsound practice" means any action, or lack of action, which is contrary to generally accepted standards of prudent operation, the likely consequence of which, if continued, would be abnormal risk of loss or danger to a credit union, its members, or an organization insuring or guaranteeing its shares and deposits. RCW 31.12.005(24).