IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOHN JENSEN, on behalf of himself and all others similarly situated, | ) ) ) | No. 31668-8-III |
| Appellant, | ) ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| LINCOLN COUNTY, a political subdivision of the State of Washington, | ) ) ) | |
| Respondent. | ) ) | |

KORSMO, J. —John Jensen appeals the dismissal at summary judgment of his claim for wages while traveling to his varying jobsites throughout the environs of Lincoln County. We agree with the trial court that the collective bargaining agreement (CBA) does not compel him to drive from the county seat to the job sites and, therefore, affirm.

FACTS

Lincoln County owns and operates a mobile rock crusher. The crusher usually remains set up in a single location for a few months before the crew moves it to another site. This location becomes the crew's work premises for the next few months. No

matter how far away the crusher is located, the crew's eight hour work day does not begin until they reach the crusher. The CBA explicitly provides that the eight hour work day "does not include travel time to and from the work site." Clerk's Papers at 135. However, the CBA does require the county to furnish the crew with transportation to and from the work site. The crusher foreman is paid a $150 monthly travel allowance.

To fulfill the transportation requirement, the county provides the crew with a sport utility vehicle (SUV). Every morning, Mr. Jensen and other members of the crew start their day at the county shop to pick up the vehicle. While at the shop, Mr. Jensen and the other crew members do not perform any required work. According to Mr. Jensen, he normally visits with the mechanics at the shop and gathers parts for the crusher on an as needed basis. Once all the crew members are present, they carpool to the current crusher site. During that commute, the crew members also do not perform any work; instead, they talk about sports, politics, and other non-work related topics.

Although the county provides the crew with an SUV, some crew members still drive their personal vehicles to the crusher site. The county does not have any policies or rules requiring the crew to use the SUV or to meet at the shop in the mornings.

The county also does not have any formal policies or rules prescribing how the crew uses the SUV. Informally, the county prohibits the crew from using the SUV for personal towing, from consuming alcohol prior to operating the SUV, and from

2

transporting non-employees. The only formal policy applicable to the vehicle is the CBA provision for equipment assigned to county employees. It makes the crew members responsible for the SUV's maintenance, which means that the crew has to notify the county mechanics when work needs to be done.

Mr. Jensen sued Lincoln County for the unpaid time spent traveling between the shop and the crusher site. At that time, he had worked on the crusher crew for approximately 6 years, and had worked for the county for approximately 14 years. The parties brought cross-motions for summary judgment on the question of liability. The superior court granted the county's motion for summary judgment and denied Mr. Jensen's cross-motion. Mr. Jensen then timely appealed to this court.

## ANALYSIS

This court reviews a summary judgment ruling de novo, performing the same inquiry as the trial court. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). The facts, and all reasonable inferences to be drawn from them, are viewed in the light most favorable to the nonmoving party. *Id.* If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. *Id.* This court may also determine a question of fact as a matter of law when reasonable minds can reach only one conclusion. *Miller v. Likins*, 109 Wn. App. 140, 144, 34 P.3d 835 (2001).

3

Here, the parties ask us to decide whether the time that Mr. Jensen spends traveling between the county shop and the crushing site is compensable under Washington's Minimum Wage Act, chapter 49.46 RCW. The answer to that question depends on whether that time falls within the meaning of "hours worked" as defined by the Department of Labor and Industries (DLI). *Stevens v. Brink's Home Security, Inc.*, 162 Wn.2d 42, 47, 169 P.3d 473 (2007). DLI defines "hours worked" as "all hours during which the employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed work place." WAC 296-126-002(8).

In *Stevens*, a group of employees sued Brink's Home Security, Inc., seeking wages for the time they spent driving their employer-provided trucks to and from home; the employees already received compensation for the time spent driving between work sites. In siding with the workers, the court highlighted a number of facts that it found relevant to the inquiry under WAC 296-126-002(8). First, the drivers took the trucks home with them every day and infrequently went to a Brink's office. Second, the workers received their assignments from home and were always on call while driving. Third, Brink's had detailed policies limiting how employees used the trucks, which included prohibitions on running personal errands in the trucks. These factors weighed in favor of classifying the time spent driving to the first call and driving home from the last call as time spent "on duty." *Stevens*, 162 Wn.2d at 45-49.

4

The next question was whether the trucks could be classified as the "employer's premises" or the employees' "prescribed work place." The court found in favor of the workers on this factor because driving the trucks was an integral part of Brink's' business. The company's business model relied on technicians going to people's houses to do installations and servicing. Workers also had to carry all necessary tools and equipment in the trucks. Workers only reported to a physical corporate office once a week to refill supplies. Workers also had to do their paperwork in the truck or at the customer's home. Formal policies required the workers to keep the trucks clean and serviced. *Id.* at 49. The Brink's vehicles essentially were mobile offices for the employees.

Mr. Jensen understandably analogizes his situation to *Stevens*. However, the facts of this case do not support classifying the time spent driving to the crusher site as time spent "on duty," nor do the facts support classifying the county provided SUV as Mr. Jensen's "prescribed place of work." Unlike *Stevens*, Lincoln County does not have any formal policies limiting Mr. Jensen's use of the SUV. In *Stevens*, the employees were always on call and could not use the trucks for personal errands. Mr. Jensen has no such limitations. Mr. Jensen also has a prescribed place of work—the crusher site—where he works for eight hours a day. In contrast, the employees in *Stevens* worked out of their trucks and rarely set foot on the employer's physical premises.

Driving the SUV also provides no benefit to the county. In *Stevens*, the employer provided vehicles benefited the employer because the employees could not work without specially outfitted vehicles capable of carrying all necessary tools and equipment. Lincoln County, however, has no reason to care how its crews get to the crusher site and only provides the SUV as a bargained for benefit. Mr. Jensen argues that driving the SUV benefits the county because he uses it to transport necessary parts between the county shop and the crusher site. However, his deposition testimony showed that no one required him to transport the parts and he performed this function infrequently. Accordingly, the SUV in this case primarily benefits the employees.

Instead of *Stevens*, we find that the facts of this case align more closely with *Anderson v. Dep't of Social & Health Servs.*, 115 Wn. App. 452, 63 P.3d 134 (2003). In *Anderson*, a group of DSHS employees sought compensation for the time they spent riding to and from McNeil Island on an employer provided ferry. The claims failed because the employees were not "on duty" during those ferry rides. During that time, the workers "engage[d] in various personal activities, such as reading, conversing, knitting, playing cards, playing hand-held video games, listening to CD (compact disc) players and radios, and napping." *Id.* at 454. Although the crew members in this case do not perform as wide of an array of personal activities while going to and from the crusher site, they

still perform no work during the commute. Instead, the crew members spend the time talking about sports, politics, and other topics of personal conversation.

Based on the foregoing facts and discussion, Mr. Jensen is not "on duty" during his daily commute, and that the county provided SUV is not part of Mr. Jensen's "prescribed place of work." It simply does not function as the equivalent of a mobile office or job site. Accordingly, the time that Mr. Jensen spends commuting does not fall within the definition of "hours worked."

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, C.J.