# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JOSEPH MCCLAIN, LINDA ALLEN, and JACOB PAYNE, individually and on behalf of all others similarly situated, | No. 59818-3-II |
| Appellants, | |
| v. | |
| STATE OF WASHINGTON, and WASHINGTON STATE PATROL, governmental entities, | PUBLISHED OPINION |
| Respondents. | |

PRICE, J. — In this case, we must decide whether troopers from the Washington State Patrol (WSP) are entitled to sue directly in superior court for alleged violations of Washington's Minimum Wage Act (MWA)[1] related to commute pay when the pay appears to comply with the terms of a collective bargaining agreement (CBA), or whether the troopers must first exhaust grievance and arbitration procedures required by a CBA.

Some troopers are personally assigned patrol vehicles. These troopers may park the vehicles at their homes and use them to commute to their assigned patrol areas. The WSP generally does not pay troopers for their commute time unless they encounter an accident, emergency, or individual committing a traffic violation while they are driving to their assigned patrol area, but in those cases, they are required to stop. The WSP has a number of other

---

[1] Ch. 49.46 RCW.

limitations on the troopers' use of the assigned vehicles. For example, even when they are not being paid for their commute time, troopers are only authorized to use their personally assigned vehicles for official WSP use—they cannot use their vehicles to transport unauthorized passengers or to drive to and from personal activities. These limitations and commute pay policies are apparently consistent with the terms of the CBAs negotiated between the WSP and the troopers' union, the Washington State Patrol Troopers Association (WSPTA).[2]

In 2022, Joseph McClain, Linda Allen, and Jacob Payne (collectively, McClain) filed an action in superior court against the WSP and the State of Washington (collectively, the State) alleging that these commute pay policies violate the MWA and the "Washington Rebate Act" (WRA).[3] McClain argued that given the level of control the WSP had over troopers commuting in personally assigned vehicles, the troopers were entitled to payment for the entire time spent commuting and that the State was willfully depriving them of wages that they were legally owed. According to McClain, these statutory violations also entitled the troopers to compensation based on the tort of unjust enrichment.[4] The State responded that despite McClain's contentions, his

---

[2] Because the time period of McClain's claims straddles two of these CBAs, we refer to the CBAs plurally.

[3] Ch. 49.52 RCW.

[4] McClain conceded in oral argument before this court that this tort claim was only a mechanism for relief for violations of the MWA and WRA and that he had no independent tort claim outside of these alleged statutory violations. Wash. Ct. of Appeals oral argument, *McClain v. State*, No. 59818-3-II (Jan. 27, 2025), at 5 min., through 5 min., 38 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-2-court-of-appeals-2025011587/?eventID=2025011587.

claims were contractual, not statutory in nature and, thus, McClain was required to exhaust grievance and arbitration procedures under the CBAs.

The superior court agreed with the State and dismissed all of McClain's claims with prejudice.

Whether the commute pay policies actually violate the MWA (or the WRA) is not our question. In this appeal, we are tasked solely with resolving whether McClain is barred from directly bringing his statutory claims in superior court without exhausting the procedures in the CBAs.

We hold that McClain may bring his MWA claim in superior court without exhausting the CBA procedures. The MWA sets a floor of statutory guarantees for workers, and parties cannot negotiate relinquishment of those rights. A claim premised on an allegation of a violation of the floor of minimum wage rights under the MWA is independent of the terms of the CBAs, and therefore, the CBAs' grievance and arbitration procedures cannot limit McClain's ability to bring this claim in superior court. But as discussed below, we make no determination as to whether the same result applies to McClain's WRA claim. Thus, we reverse the superior court, but our decision is without prejudice to the State should it choose to again raise exhaustion with the superior court for the WRA claim.

FACTS

I. BACKGROUND ON WSP POLICIES AND GRIEVANCE PROCEDURES

WSP troopers and the State engage in collective bargaining to negotiate " 'wages, wage-related matters, and nonwage matters.' " Clerk's Papers (CP) at 86 (quoting RCW 41.56.473). Negotiated terms are finalized into a CBA that is valid for a period of two years. According to

the CBAs for the periods of 2019-2021 and 2021-2023, the WSP recognizes the WSPTA as "the exclusive bargaining representative" that negotiates on behalf of the troopers "for the purpose of establishing terms and conditions of employment in accordance with the provisions of RCW 41.56." CP at 94, 124. Among these negotiated terms are policies regarding the assignment of vehicles to troopers and when troopers are "on-duty" and entitled to compensation. CP at 98, 128. Based on the terms of the CBAs, the WSP creates and maintains internal policies and a regulation manual that provide additional guidance and procedures.

A. VEHICLE AND COMMUTING POLICY

According to the CBAs, troopers who commute from home to their assigned patrol area in an "assigned take home vehicle" are considered "off-duty" during their normal commute and do not receive compensation for their time. However, in the event that they come upon a disabled vehicle, accident, criminal traffic violation, or an emergency during their commute, troopers must respond and will be switched into "on-duty" status and will be given overtime compensation until assistance arrives to relieve the commuting trooper.

The *Washington State Patrol Regulation Manual* expands upon the topics of the CBAs and creates policies and procedures that explain how the CBA terms function in practice. Chapter 17 of the manual authorizes some, but not all, WSP troopers to commute in personally assigned vehicles. Among other requirements, in order for a trooper to be authorized to commute in a state vehicle it must be "advantageous or economical to the state." CP at 81. The manual also expands on the terms of the CBAs regarding the use of "personally assigned vehicles." The manual explains that regardless of whether a trooper is off-duty while commuting, they are still otherwise subject to the normal restrictions regarding state vehicle use during the commute. The vehicles

4

must be used "only for official business and in a manner consistent with applicable state travel regulations;" they cannot be used for any personal reasons. CP at 82. Troopers cannot use their assigned vehicle to transport family members, friends, or any unauthorized passengers for personal activities.

B. GRIEVANCE PROCEDURES

The CBAs also outline exclusive grievance procedures that troopers *must* use "for the resolution of disputes regarding the specific meaning, interpretation, or application of the express provisions of [the CBAs]." CP at 107, 138. The CBAs set out a three-step process to resolve grievances. First, the affected trooper and/or the WSPTA submits a written grievance detailing "the facts of the grievance, the date on which the incident occurred, the Article and Section of the Agreement alleged to be violated, and the remedy sought" to the trooper's immediate supervisor. CP at 108, 139. The supervisor forwards the grievance to the division or district commander who decides and responds to the grievance. If the grievance is not resolved by the first step, then the trooper or the WSPTA may submit their grievance to the chief who will set the matter for a hearing with the WSP Labor and Policy Advisor, the WSPTA, and the trooper. After the hearing, the chief will issue a decision resolving the matter.

If the first or second steps are insufficient to resolve the grievance, then the WSPTA can refer the grievance to arbitration. The arbitrator, however, has limited authority; their decision can only be based on their interpretation of the meaning or application of the CBA, and the facts of the grievance. "A decision rendered consistent with the terms of this Agreement shall be final; however, a decision which exceeds the authority granted herein may be appealed to a court of proper jurisdiction." CP at 109, 140.

5

II. TROOPERS' GRIEVANCE, COMPLAINT AND FURTHER PROCEEDINGS

In November 2020, a group of state troopers and their union representative, filed a grievance with the troopers' union, the WSPTA. The grievance expressed the group's concerns "about the lack of compensation for previous hours worked" while commuting in their state vehicles—asserting that this violated the law. CP at 619, 622. The grievance alleged that the troopers should receive commute pay because the WSP exercised too much control over troopers when they commuted in state vehicles.

The WSPTA declined to move forward with the troopers' grievance because it determined that the commute pay policies were consistent with the terms of the CBA negotiated by the union. The WSPTA representatives said that if the troopers wanted to continue to pursue their grievance, they would have to hire their own separate counsel. According to one of the troopers, after this meeting, "[they] never heard from WSPTA about [their] grievance again." CP at 625.

Almost two years later, in September 2022, WSP troopers Joseph McClain, Linda Allen, and Jacob Payne (collectively, McClain) filed a complaint directly in superior court against the State. Like the earlier grievance to the union, the troopers alleged that they, and other similarly situated WSP troopers, were entitled to unpaid wages for their commute time because of the level of control that the WSP exercised over them. Citing to *Stevens v. Brink's Home Security Inc.*, the complaint alleged that this control was sufficient for the troopers to be entitled to compensation

for their "hours worked" under the MWA. 162 Wn.2d 42, 169 P.3d 473 (2007).[5] Thus, by not paying the troopers for all commute time, the complaint alleged that the State violated the MWA and the WRA. The complaint made no mention of the CBAs.

In February 2023, the State filed a motion for summary judgment. The State argued that McClain's claims must be dismissed because he failed to exhaust the mandatory bargaining grievance and arbitration procedures required under the CBAs. The State contended that the Public Employee Collective Bargaining Act (PECBA)[6] required McClain to address his claims through the grievance procedures outlined in the CBAs, not through a civil lawsuit in superior court. PECBA, according to the State, commands that "the CBA provisions prevail and supersede any claims"—including claims brought under the MWA. CP at 44 (boldface omitted). Finally, the State argued that even if the superior court did not dismiss the action on these grounds, McClain lacked standing. The State contended that the CBAs, PECBA, and Public Employment Relations Commission (PERC) all designate the WSPTA as "the exclusive representative of WSP troopers," therefore, "individual troopers do not have any right or standing to represent the interests of other WSP troopers." CP at 52.

---

[5] In *Brink's Home Security*, our Supreme Court concluded that the MWA requires all workers to be paid for "hours worked" but the statute did not define the term. 162 Wn.2d at 47. Without a definition in the MWA itself, our Supreme Court held that, in the context of whether drive time is compensable, a regulation that applies to the "Industrial Welfare Act," (Ch. 49.12 RCW), WAC 296-126-002(8), would be used to determine "hours worked" under the MWA. *Id*. The regulation provides, " '[h]ours worked' shall be considered to mean all hours during which the employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed work place." WAC 296-126-002(8).

[6] RCW 41.56.010-900; RCW 41.06.150.

The superior court granted the State's motion and dismissed all of McClain's claims with prejudice.

McClain appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

We review motions for summary judgment de novo. *M.E. v. City of Tacoma*, 15 Wn. App. 2d 21, 31, 471 P.3d 950 (2020), *review denied*, 196 Wn.2d 1035 (2021). Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Meyers v. Ferndale Sch. Dist*., 197 Wn.2d 281, 287, 481 P.3d 1084 (2021).

### II. EXHAUSTION OF REMEDIES UNDER THE CBAS

McClain argues that the superior court erred in dismissing his claims on summary judgment because exhaustion of remedies under the CBAs is not required before bringing an action under the MWA. He asserts that his MWA claim "sound[s] in statute" and is independent from the CBAs and, therefore, he "need not first exhaust remedies contained in a collective bargaining agreement." Appellant's Opening Br. at 14-15. We agree.[7]

---

[7] McClain's briefing focuses almost entirely on his MWA claim and fails to address any potential difference between this claim and his WRA claim, or his tort claim for unjust enrichment. Similarly, the State's briefing does not address any distinctions among the different claims (likely because their position is arguably equally applicable to all three claims). Because the parties limit their briefing solely to McClain's MWA claim, our opinion is similarly limited. Below, however, we address the consequences of this limitation.

A. APPLICABILITY OF ANALOGOUS CASELAW UNDER § 301 OF THE LMRA

McClain appears to acknowledge that there is no Washington case law directly on point to support his assertion that he can bring an MWA claim independent of the CBAs. But he relies heavily on what he contends are analogous cases involving the federal Labor Management Relations Act of 1947 (LMRA).[8] The State rejects any applicability of these cases construing the LMRA, arguing that critical differences in the federal context mean these cases should not guide our analysis.

Considering the scarcity of on-point authorities to assist the resolution of this dispute, whether we utilize these LMRA cases by analogy may be dispositive to our conclusions. However, before plunging into an analysis of them, we first pause to evaluate their applicability.

The LMRA protects the rights of employees to organize and bargain collectively. *See* 29 U.S.C. § 141. It creates dispute resolution procedures for unions and employers and gives a CBA " '[s]tatutory recognition . . . as a valid, binding, and enforceable contract.' " *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 454, 77 S. Ct. 912, 1 L. Ed. 2d 972 (1957) (quoting S. REP. NO. 80-105, at 17 (1947)). Because the overarching purpose of the LMRA in creating these procedures is to prevent "industrial strife" from impeding the free flow of commerce, its provisions only apply to "industry affecting [interstate] commerce," not state employees. 29 U.S.C. § 141; 29 U.S.C. § 185.

Section 301 of the LMRA specifically addresses CBA enforcement. It requires disputes regarding the enforcement of a CBA to be resolved through federal common law in order to

---

[8] 29 U.S.C. §§ 141-262.

"ensure uniform interpretation of collective-bargaining agreements" and "promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988). While states have concurrent jurisdiction and may hear § 301 claims, "states cannot use local rules to resolve breach of CBA disputes." *Commodore v. Univ. Mech. Contractors, Inc.*, 120 Wn.2d 120, 126, 839 P.2d 314 (1992). Therefore, when resolving CBA disputes under § 301, courts will generally require that dispute resolution procedures outlined in the CBAs are followed at the expense of any separate state law claim—resulting in the state law claims being "preempted." *See id.* at 127.

But § 301 preemption of state law claims is not absolute. The Supreme Court has warned that employers cannot simply use bargaining to "exempt themselves from whatever state labor standards they disfavor[]." *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985). "Clearly, § 301 does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under state law." *Id.* Thus, when considering a § 301 preemption dispute, courts must balance the general preference for arbitration under a CBA with protecting an employee's basic rights under state law. *See id.*

To inform this exercise, the Supreme Court has outlined the following test—before state claims will be preempted under § 301 (meaning the terms of a particular CBA will control), the state law claims must be " '*inextricably intertwined* with consideration of the terms of the labor contract.' " *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 863, 93 P.3d 108 (2004) (emphasis added) (quoting *Allis-Chalmers Corp.*, 471 U.S. at 213). Thus, "[o]nly those claims founded directly on rights created by a collective bargaining agreement and those substantially dependent on analysis of a collective bargaining agreement" must be resolved via the CBA's

remedies. *United Food & Commercial Workers Union Loc. 1001 v. Mut. Benefit Life Ins. Co.*, 84 Wn. App. 47, 51, 925 P.2d 212 (1991) (UFCW), *abrogated on other grounds by Seattle Prof'l. Eng'g Emps. Ass'n v. Boeing Co.*, 139 Wn.2d 824, 830, 991 P.2d 1126 (2000), *review denied*, 133 Wn.2d 1021 (1997). For example, in *UFCW*, the court held that an MWA claim was independent because the court could resolve the claim by looking at employee pay stubs and the statute—consulting the CBAs was not required. *Id.* at 52-53. Claims that are independent of a CBA, then, are not preempted under § 301. *See id.* at 51-53.

State and federal courts construing this test under § 301 have struggled to determine what it means for a state law claim to be " 'inextricably intertwined' " or " 'dependent upon' " the terms of a CBA. *See Commodore*, 120 Wn.2d at 128, 133 (quoting *Lingle*, 486 U.S. at 402, 412-13). To resolve the troublesome ambiguity of these terms, our Supreme Court has endorsed the "Marcus model" to guide courts in analyzing whether a state law claim is independent of a particular CBA. *Id.* at 132. The Marcus model defines an independent claim as one "that an employee can bring without any employment contract." Stephanie R. Marcus, *The Need for A New Approach to Federal Preemption of Union Members' State Law Claims*, Note, 99 Yale L.J. 209, 210 n.13 (1989). "[I]f no cause of action would exist without the CBA," then the claim is not independent. *Id.*

The Marcus model distinguishes between nonnegotiable and negotiable independent rights. *Commodore*, 120 Wn.2d at 130. "[N]onnegotiable state law rights—those that cannot be waived in contract—[are] independent of [CBAs] by definition: They *cannot* be altered by CBA negotiations." *Id.* at 131. Negotiable rights on the other hand are only independent if they "do[]

not arise from the CBA and only the employer's *defense* mandates interpreting the CBA." *Id.* at 130; *see also* Marcus, *supra*, at 210 n.13.

Washington courts have consistently held over numerous decisions construing § 301 that MWA claims are based on nonnegotiable rights. *See*, *e.g.*, *Hisle*, 151 Wn.2d at 864 ("The right to overtime under the MWA is a nonnegotiable state statutory right."); *Schneider v. Snyder's Foods, Inc.*, 95 Wn. App. 399, 402, 976 P.2d 134 (1999) (holding that the rights provided by the MWA may not be waived by a CBA because CBAs may only establish wages "in excess of the statutory minimums") (citing RCW 49.46.110), *review denied*, 116 Wn. App. 706 (2003); *Ervin v. Columbia Distrib., Inc.*, 84 Wn. App. 882, 891, 930 P.2d 947 (1997) (holding that rights under the MWA cannot be waived through collective bargaining); *UFCW*, 84 Wn. App. at 52 (explaining that wage and hour rights under the MWA are nonnegotiable because "the Legislature stated that parties, bargaining collectively, may establish wages or other work conditions only 'in excess of the applicable minimum' set forth in [the MWA]") (quoting RCW 49.26.110). It is well established that " '[t]he general preference for arbitration is outweighed by the statutory requirements of the Minimum Wage Act and the strong public policy . . . against depriving union employees statutory rights that undeniably would be available to nonunion employees.' " *Hisle*, 151 Wn.2d at 864 (quoting *Ervin*, 84 Wn. App. at 891) (second alteration in original). Thus, based on the Marcus model, MWA claims are independent by definition in § 301 cases.

McClain argues that the context of § 301 preemption is analogous to this case. McClain suggests that the balancing that these courts undertake (under § 301) between the federal preference for arbitration and CBAs with an employee's separate state law rights is very similar to the question posed here— "whether employees are required to exhaust contractual remedies

under a CBA before asserting [MWA] claims." Appellant's Opening Br. at 28, n.6. According to McClain, these cases provide an analogous context that, if used, clearly supports his position that his MWA claim should be separate from the CBAs.

The State responds that cases construing § 301 preemption have no application to this case. The State argues that in these § 301 cases, state claims were favored over the federal preference for CBA arbitration because of Washington's disdain of federal infringement of state police powers. According to the State, this case presents no similar tension between federal and state power. The State further argues that the § 301 context is inapplicable because those cases do not involve public employers, uniformed state troopers, or the specific provisions of PECBA (discussed more fully below).

We agree with the State that the § 301 cases do not represent a perfect analogy. McClain's claims clearly do not involve issues of federal preemption and the conflict between overlapping federal and state authorities. And there are important factual differences between public unions involving law enforcement and National Labor Relations Board bargaining involving private companies.

Nevertheless, we are persuaded that the context is similar enough, especially given the absence of directly on-point case law, to view these § 301 cases as being relevant to our analysis of this dispute. Washington courts construing § 301 principles have grappled, in at least a *similar* context, with the conflict between bargained-for rights guaranteed in a CBA and non-CBA rights guaranteed by state law. *See*, *e.g.*, *Commodore*, 120 Wn.2d at 125-26 (addressing conflict between a CBA which did not include a right to be protected from racial discrimination and protections guaranteed by state tort law); *Schneider*, 95 Wn. App. at 403 (addressing conflict

13

between CBA terms that classified route drivers as ineligible for overtime pay and rights established under the MWA); *UFCW*, 84 Wn. App. at 52 (addressing conflict between CBA terms that said that employees could not be paid for "off the clock" work and rights established under the MWA). Albeit in a slightly different context, this court faces this same type of conflict. Thus, as we weigh these similar considerations, we conclude that § 301 case law is relevant to our analysis.

B. WHETHER MCCLAIN'S MWA CLAIM IS INDEPENDENT FROM THE CBAs UNDER A § 301 ANALYSIS

We now turn to address whether McClain's MWA claim is independent from the terms of the CBAs under a § 301-type analysis. McClain argues that because his claim is "premised solely on the State's failure to comply with statutory wage laws," it does not "arise from the CBAs." Appellant's Reply Br. at 15. As McClain points out, his complaint never mentions the CBAs. This, McClain contends, means his claim is clearly independent of the CBAs.

The State rejects the notion that McClain's MWA claim is independent under this § 301-type analysis, arguing that it is impossible for McClain to make his claims without necessarily referencing the CBAs. According to the State, every aspect of the conduct McClain alleges violates the MWA was required to be bargained for, and agreed to, by the union and the State as part of the CBAs. Because interpreting the CBAs is necessary to even understand what the commute pay policies are, the State asserts the CBAs must control.

Moreover, the State rejects the application of those Washington cases (construing § 301) that have said that rights under the MWA cannot be preempted by the terms of a CBA because of the types of MWA claims involved in those cases. The State contends those other cases involved

14

MWA claims like overtime or other "off the clock" work. But claims where employees allege that they were not paid for all "hours worked" are "more malleable," fact-based inquiries. Wash. Ct. of Appeals oral argument, *McClain v. State*, No. 59818-3-II (Jan. 27, 2025), at 22 min. 32 sec. through 22 min. 42 sec., video recording by TVW, Washington State's Public Affairs Network.[9] Because, here, the undisputed facts are that the State and the union have negotiated specific commuting terms in the CBAs that address the circumstances during which a trooper is entitled to compensation, the State asserts McClain's claim must be resolved through interpretation of those terms. Accordingly, the State contends that even if § 301 case law was to be applied, McClain's claim is not independent, it is, instead, "inextricably intertwined" with the CBAs.[10]

Setting aside for now the impact of PECBA on this analysis and looking simply at the independence of McClain's MWA claim under the § 301 analogy, we are unpersuaded by the State's position. Even though no court has specifically addressed whether a right to be paid for commute time or for "hours worked" under the MWA is nonnegotiable, the broader question has been answered—wage issues can be bargained for through a CBA *so long as* the resulting terms are "in excess of the applicable minimum" mandated by the MWA. *See Schneider*, 95 Wn. App. at 402; *UFCW*, 84 Wn. App. at 52. Therefore, it does not matter whether the cases were only addressing claims for unpaid wages for overtime or "off the clock" work. The principle in these cases is broader; that is, employees cannot bargain away any of their minimum wage rights. As

---

[9] https://tvw.org/video/division-2-court-of-appeals-2025011587/?eventID=2025011587

[10] The State builds on these arguments with its contention that PECBA operates to compel the conclusion that the CBAs govern this dispute. We address that component of the State's argument below.

15

these rights cannot be waived, McClain's claim, rooted in the simple allegation that their commute pay violates the MWA, is nonnegotiable and "independent of the [CBAs] by definition."[11] *Commodore*, 120 Wn.2d at 131.

Moreover, based on the language of *Commodore* (and its adoption of the Marcus model), the fact that the State's answer to McClain's claim requires referencing the details of the CBAs does not change this conclusion. *See id.* at 130. As explained above, *Commodore* suggested that a state law claim is still independent "if it does not arise from the CBA and only the employer's *defense* mandates interpreting the CBA." *Id.* Indeed, *Commodore* instructs that we analyze a claim's independence of a CBA as it is presented to us by the plaintiff, not how it is characterized by the defense. *See id.* Thus, because McClain's complaint only alleges a violation of the MWA and there is no need to interpret the CBA to *make* that claim (as opposed to answer it), we conclude McClain's claim is independent of the CBAs under a § 301-type analysis.

We also reject the State's contention that it is *necessary* to interpret the CBAs in order to resolve McClain's claim because the terms of the CBAs address the precise issue of "hours worked" when a trooper is commuting. A claim is independent of a CBA "even though it may require addressing precisely the same set of facts as would arbitration under the agreement"—the true question is whether interpretation of the CBAs is necessary or required to make the claim. *UFCW*, 84 Wn. App. at 53; Marcus, *supra*, at 210 n.13 ("an 'independent' state law claim is one that an employee can bring without any employment contract"). Whether the hours that McClain spent commuting meets these legal standards imposed by the MWA can be determined from

---

[11] We reiterate, however, that we do not address, and have no opinion on, whether the commute pay these troopers received actually violates the MWA.

testimony from WSP troopers, department supervisors, or other employees. Additionally, the hours that McClain spent commuting and the hours for which he was paid can be shown from pay stubs and time sheets. While this information would presumably be consistent with the provisions of the CBAs, interpretation of the CBAs is not *necessary* to establish these facts.[12]

Even if the State is correct that the bargained-for terms under the CBAs substantively meet the requirements of the MWA because of the "malleability" of an hours worked MWA claim, the core claim is still an MWA violation. Although the CBAs would be used as part of the State's defense, the underlying dispute would still be whether the MWA was violated, making the claim independent of the CBAs.

But as noted above, even though the § 301 context is relevant here, it is not a perfect analogy. So we press on to address the State's main, somewhat overlapping, argument—that PECBA requires a different result.

III. THE APPLICATION OF PECBA'S SUPREMACY CLAUSE

Regardless of whether McClain's claim would be deemed "independent" under a § 301-type analysis, the State argues that PECBA requires that the CBAs and their exhaustion requirements still prevail here. Building on its "hours worked" argument, the State contends that PECBA's statutory language changes the analysis of whether a CBA can limit a uniformed state trooper's ability to bring suit under the MWA.

---

[12] Moreover, it is not clear that the State's defense requires *interpreting* the CBAs because the parties do not seem to have identified a dispute about what the CBAs mean. In other words, the parties have not clearly identified a dispute about what the CBAs say or what they allow, the parties dispute whether the CBAs' commute pay terms comply with the MWA.

The State appears to contend that the comprehensive bargaining structure outlined in PECBA changes how we analyze McClain's MWA claim under *Brink's Home Security*—requiring his claim to be resolved using the terms of the CBAs. *Brink's Home Security* adopted the definition from WAC 296-126-002(8) for "hours worked," which requires looking at whether an employee is on-duty and at their employer's premises or prescribed work place to determine whether the MWA requires an employee to be compensated for their "hours worked." 162 Wn.2d at 47-48. Part of the State's argument appears to be that PECBA means that this holding from *Brink's* does not apply and that the definition of "hours worked" is dependent on the CBAs, not WAC 296-126-002(8). The State argues that the Industrial Welfare Act, where WAC 296-126-002(8) comes from, "is subject to exception . . . for the State." Wash. Ct. of Appeals oral argument, *supra*, at 21 min. 18 sec., through 21 min., 28 sec. "[T]herefore to the extent [the] 'hours worked,' definition is inconsistent with the State's bargain and what the State [has] approved, that is void as to the State." *Id.* at 21 min., 28 sec., through 21 min., 42 sec.

The State supports this somewhat nuanced argument by urging a close review of PECBA's robust bargaining provisions, arguing that because McClain's claim surrounds mandatory bargaining subjects and because "the legislature established a detailed statutory process through which troopers and the State are required . . . to bargain over these very issues," the definition of "hours worked" must come from the CBAs. *Id.* at 25 min., 40 sec. through 26 min., 3 sec. According to the State, "if the court [were to] make[] a determination that the court's going to decide all of [the CBAs'] terms, then the court is going to have to override the bargain between the State and the troopers' association that was on an issue that's mandatory, that they were required to bargain over, and substitute its opinion for what they bargained for." *Id.* at 15 min.,

17 sec., through 15 min., 52 sec. This, the State contends, "would be entirely inconsistent with the obligation to have, the idea of a mandatory bargaining obligation" under PECBA. *Id.*

The State argues that this position is not only supported by PECBA's robust bargaining requirements, but it is also rooted in PECBA's supremacy clause. Section 905 of PECBA states that its requirements and procedures "are intended to be additional to other remedies and shall be liberally construed to accomplish their purpose" and that "if any provision of this chapter conflicts with any other statute, ordinance, rule or regulation of any public employer, the provisions of this chapter shall control." RCW 41.56.905.

Based on this supremacy clause, the State contends that the provisions of PECBA control over all conflicting statutes, including the MWA (at least with respect to an "hours worked" claim). Resp't Answering Br. at 21, 64-65; *see* Wash. Ct. of Appeals oral argument, *supra*, at 15 min., 17 sec., through 15 min., 52 sec. To do otherwise would be "corrosive to collective bargaining and inconsistent with [PECBA]." Resp't Answering Br. at 64. Thus, because PECBA requires wages and wage related issues to be resolved through mandatory bargaining and arbitration, McClain is bound by the bargained-for terms in the CBAs and cannot seek redress under the MWA in court.

McClain says the State is wrong—PECBA does not say anything either in its bargaining provisions or its supremacy clause that would change the conclusion that his claim is statutory and independent from the CBAs. Further, McClain points out that the MWA contains its own supremacy-type language that prevents bargaining for wages below the floor of the MWA. Thus, McClain contends that no CBA may waive rights under the MWA regardless of PECBA.

19

When reconciling conflicting statutes, the primary goal is to harmonize the statutes and give effect to both provisions if possible. *Associated Gen. Contractors of Wash. v. State*, 2 Wn.3d 846, 855-56, 544 P.3d 486 (2024). However, when the statutes cannot be harmonized, "we apply recognized principles of statutory construction to arrive at the legislature's intent." *State v. Buck*, 2 Wn.3d 806, 819, 544 P.3d 506 (2024).

Statutory interpretation is a question of law that we review de novo. *Lakeside Indus. v. Dep't of Revenue*, 1 Wn.3d 150, 155, 524 P.3d 639 (2023). The goal of statutory interpretation is to carry out the legislature's intent. *Leishman v. Ogden Murphy Wallace, PLLC*, 196 Wn.2d 898, 904, 479 P.3d 688 (2021). We must give effect to the plain meaning of a statute as an expression of legislative intent where possible. *Id.* However, when a statute is ambiguous, we turn to traditional statutory interpretation rules to determine its meaning. *Jametsky v. Olsen*, 179 Wn.2d 756, 762, 317 P.3d 1003 (2014). "A statute is ambiguous if there is more than one reasonable interpretation." *State v. Elwell*, 17 Wn. App. 2d 367, 370, 486 P.3d 152 (2021).

Given that both PECBA and the MWA have supremacy clauses with potentially conflicting language, we are tasked with analyzing what the legislature intended. First, we begin by comparing the language of the two statutes, the MWA and PECBA. As McClain points out, the MWA provides that employees and employers cannot agree to less than what is required under the statute. RCW 49.46.090 ("Any agreement between such employee and the employer allowing the employee to receive less than what is due under this chapter shall be no defense to such action."). Further, the MWA contains additional language that suggests that its provisions supersede other authorities. RCW 49.46.110 provides that although generally the MWA cannot

interfere with an employee's bargaining rights, that bargaining terms must be "in excess of the applicable minimum under the provisions of this chapter."

PECBA, on the other hand, protects employee bargaining rights by requiring employers and unions to engage in collective bargaining for "personnel matters, including wages, hours, and working conditions" and by prohibiting employers from interfering with those rights. RCW 41.56.030; RCW 41.56.140; RCW 41.56.150. And as noted above, PECBA's supremacy language states these requirements and procedures outlined in PECBA "shall be liberally construed" and that its provisions control over "any other statute, ordinance, rule or regulation of any public employer." RCW 41.56.905.

A. PLAIN LANGUAGE

McClain heavily relies on the MWA's supremacy language in RCW 49.46.110 and RCW 49.46.090. These two provisions, according to McClain, make it clear that "the [MWA] sets the baseline for wages which all employees . . . are entitled," regardless of whether their bargaining was subject to PECBA. Appellant's Reply Br. at 34.

On the other hand, the State contends that PECBA's supremacy clause, RCW 41.56.905, is dispositive, especially given that McClain is making an "hours worked" claim. PECBA's supremacy clause makes it clear that disputes involving mandatory bargaining subjects, like wages, cannot be resolved outside of CBA procedures even if there would otherwise be a statutory cause of action.

While the plain language of each of these statutes is clear when read in isolation, the language is arguably unclear as to whether the legislature intended PECBA (and CBAs under PECBA), to control over the requirements of the MWA. Because the statutory language could

21

be interpreted to mean that either the MWA or PECBA controls over the other, we must look further to determine legislative intent. *See Buck*, 2 Wn.3d at 815 (once it is determined that the language of a statute or statutes is ambiguous, other sources of legislative intent may be referenced, including statutory construction, legislative history, and relevant case law to determine legislative intent).

### B. PERC INTERPRETATION OF PECBA'S SUPREMACY CLAUSE

Specific to PECBA, another source to interpret the statutory language is the decisions of the Public Employment Relations Commission (PERC). PECBA empowers PERC "to adjudicate unfair labor practice complaints and to issue rules and regulations to carry out the provisions of the public employee collective bargaining statutes," including PECBA. *Snohomish County Pub. Transp. Benefit Area v. Pub. Emp't Relations Comm'n*, 173 Wn. App. 504, 515, 294 P.3d 803 (2013). While courts are not bound by PERC's decisions, "PERC's interpretation of collective bargaining statutes is 'entitled to substantial weight and great deference.' " *Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 470, 938 P.2d 827 (1997) (quoting *City of Bellevue v. Int'l Ass'n of Fire Fighters, Loc. 1604*, 119 Wn.2d 373, 382, 831 P.2d 738 (1992)).

PERC has discussed the appropriate breadth of PECBA's supremacy clause (RCW 41.56.905). Despite "the seemingly all-encompassing scope of RCW 41.56.905," PERC has determined that the bargaining requirements of PECBA do not control over *all* other statutes. *Kitsap County Deputy Sheriff's Guild v. Kitsap County*, No. 132943-U-20, at 12 (Wash. Pub. Emp't Relations Comm'n Feb. 5, 2021). It has explained that when the legislature "occupies the field" on an issue, or takes away an employer's authority to bargain about that issue, PECBA's supremacy clause does not apply—even if that issue would otherwise be a mandatory subject of

bargaining. *Id*. at 5, 11. To determine if the legislature "occupies the field," PERC will examine a particular statute to see if there was legislative intent for that statute to control over an employee's bargaining rights. *See Int'l Ass'n of Fire Fighters, Loc. 27 v. City of Seattle*, No. 10901-U-94-2536, at 5-10 (Wash. Pub. Emp't Relations Comm'n Mar. 18, 1997).

For example, in *Int'l Ass'n of Fire Fighters*, PERC looked at the statutory language (and court interpretations) of the Law Enforcement Officers and Fire Fighters Retirement System (LEOFF). *Id.* at 6-10. Analyzing case law, PERC noted that the court referred to LEOFF using "absolute and pre-emptive terms" like "*exclusive* retirement act for employees that it covers" or that it "transfers present members . . . into the new system *without any choice on their part*." *Id.* at 9 (emphasis added) (boldface omitted) (alteration in original). Based on this language, PERC found that LEOFF "occupies the field of fire fighter pensions, so that this employer cannot legally bargain over the union's proposal." *Id.* at 5. Because the legislature intended LEOFF to occupy the field, PECBA's supremacy clause, broad though it may be, did not apply. *Id.*

Especially given the "substantial weight" we give PERC decisions that interpret PECBA, we agree with its formulation that PECBA's supremacy clause does not supersede another statute if the legislature has "occupied the field" on a particular issue.[13] Thus, PECBA does not give

---

[13] As part of its argument that PECBA's supremacy clause defeats McClain's claim, the State cites to our Supreme Court's decision in *Rose v. Erickson*, 106 Wn.2d 420, 721 P.2d 969 (1986). In *Rose*, our Supreme Court determined that PECBA's supremacy clause allowed parties to bargain terms that were inconsistent with chapter 41.14 RCW (civil service for sheriff's office). *Id.* at 421. While *Rose* represents an endorsement of the strength of PECBA's supremacy clause, the circumstances here can be distinguished. In *Rose*, our Supreme Court found a facial conflict between chapter 41.14 RCW and PECBA, but it gleaned from the chronology of enactments that the legislature did not intend for chapter 41.14 RCW to supplant PECBA. *Id.* at 424. Such an analysis, of course, would have been unnecessary if PECBA superseded all other statutes on every occasion. But more importantly, there was no indication that the legislature intended to "occupy

employers and unions authority to create agreements that would clearly violate applicable statutes or court decisions. *Kitsap County*, No. 132943-U-20 at 22. Applying these principles here, it does not matter that wage issues are typically mandatory subjects of bargaining. We look at the MWA to see if this type of legislative intent is evident. We believe there is such an intent, at least with respect to *the floor of minimum wage rights* in the MWA.

We emphasize "the floor of minimum wage rights" intentionally. The State accurately argues that PECBA requires bargaining about wage and wage issues. Clearly, then, one cannot conclude that the legislature "occupied the field" of wages *generally* with the MWA. But when the "field" is the issue of *the floor of minimum wage rights*, the case law makes it evident that the legislature has "occupied" that entirely with the MWA. This is true even if the claim relates to the floor of required compensation for "all hours worked." What standards to apply for an "hours worked" claim in this context, whether simply the formulation in *Brinks* or some other standard, goes to the merits of the claim, not the underlying character of the claim.[14] The claim remains, at its root, a claim for violating the floor of minimum wage rights protected by the MWA.

---

the field" with chapter 41.14 RCW to the same degree seen in the LEOFF (discussed in *Int'l Ass'n of Firefighters*) or the MWA. Thus, we find *Rose* unhelpful.

[14] Part of the State's argument, especially at oral argument, appears to be that in the unique context of uniformed state employees, PECBA allows the parties to essentially bargain for what should constitute "hours worked" under the MWA. We view the question of what standard to apply to defining "hours worked" as going to the merits of the dispute and offer no opinion on that question. Indeed, because "hours worked" is not defined in the MWA, it is possible that the formulation in *Brinks* (and its adoption of WAC 296-126-002(8)) may be ultimately determined to be inapplicable to McClain's MWA claim; nonetheless our independent claim analysis would remain the same. *See Commodore*, 120 Wn.2d at 130 (claims are still independent if they "do not arise from the CBA and only the employer's *defense* mandates interpreting the CBA").

24

The MWA's provisions clearly show that the legislature did not intend for the provisions of the MWA to be bargained away. *See* RCW 49.46.090; RCW 49.46.110. And multiple decisions from courts have used language that is consistent with this—describing that MWA rights "cannot be waived" and are "nonnegotiable." *See*, *e.g.*, *Hisle*, 151 Wn.2d at 864, n.8; *see also UFCW*, 84 Wn. App. at 52 ("In enacting [MWA] protections, the Legislature stated that parties, bargaining collectively, may establish wages or other work conditions only 'in excess of the applicable minimum.' ") (quoting RCW 49.46.110).

We also note that by following PERC's approach, we interpret the MWA and PECBA as harmoniously as possible. *See Associated Gen. Contractors of Wash.*, 2 Wn.3d at 855-56. Despite what the State seems to contend, the fundamental protections of the MWA are typically not in conflict with PECBA's "detailed statutory process" that requires the troopers union and the State to bargain over wage issues. *See* Wash. Ct. of Appeals oral argument, *supra* at 25 min., 40 sec. through 26 min., 3 sec. The WSPTA and the State must still follow PECBA's detailed bargaining process and bargain over mandatory subjects—they just cannot bargain below the floor.

Therefore, we hold that PECBA's supremacy clause does not apply to supersede the MWA with respect to the floor of minimum wage rights, including for claims based on

---

To the extent that the State is making a slightly different argument, that because of PECBA, the troopers are no longer entitled to compensation for their "hours worked" *pursuant to the MWA*, we flatly reject that position. We see no viable basis to conclude that public employees lose the protections of their rights under the MWA (or that it is not appropriately characterized as a claim under the MWA) even if it turns out that the parties' bargaining is not irrelevant to the merits or even if the formulation in *Brink's* is found not to apply. The claim remains an MWA claim.

compensation for "hours worked." The MWA makes it clear that parties cannot bargain around these rights. And if PECBA's role in this dispute does not apply to change the application of the MWA, then we are left with confidence in our conclusion under the § 301 analysis that McClain's claim is independent of the CBAs. Thus, the claim may be brought in superior court without exhausting the procedures under the CBAs.

IV. McClain's Standing To Pursue MWA Claim

The State argues that even if a stand-alone MWA claim may be brought outside of the CBAs, McClain lacks standing to make it. The State argues that PECBA and PERC have established the WSPTA as the "exclusive representative of troopers for the purposes of establishing terms and conditions of employment." Resp't Answering Br. at 69. The State further contends that "[PECBA] does not contemplate or grant individual troopers authority to bring an action in superior court for their disagreement over conditions subject to bargaining—and on behalf of all other troopers." *Id.* at 70. It only gives that right to the WSPTA or the WSP itself.

McClain responds that PECBA does not preclude him from bringing an MWA claim because it "does not divest public employees of standing to assert their statutory wage claims in a judicial forum." Appellant's Opening Br. at 5. Because his claim is purely statutory in nature, McClain contends that PECBA and the CBAs do not have authority to determine whether he has standing.

We are unpersuaded by the State's argument. The language of the CBAs and PERC specifically designate the WSPTA as the "exclusive *bargaining* representative." CP at 94, 124; *Wash. State Patrol Troopers Ass'n*, No. 6990-E-87-1202, at 1-2 (Wash. Pub. Emp't Relations Comm'n Nov. 23, 1987); *Aldridge v. Wash. State Patrol Troopers Ass'n*, No. 130029-U-18

(Wash. Pub. Emp't Relations Comm'n Aug. 1, 2019) (emphasis added). There is no language that designates the union as the exclusive representative for all disputes. We cannot ignore the use of the term "bargaining" and expand the exclusive nature of the WSPTA's standing to include, as the State urges, "litigation of wage and wage-related matters, particularly on behalf of a 'class' or 'group.' " Resp't Answering Br. at 70. PECBA defines "collective bargaining" to mean "the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures." RCW 41.56.030. And PERC has clearly distinguished between what is bargaining and what is litigation when it describes limitations on its authority. *See Minetti v. Port of Seattle*, No. 6201-U-86-1179, No. 6214-U-86-1182, at 16-17 (Wash. Pub. Emp't Relations Comm'n Dec. 16, 1988) (distinguishing between its ability to resolve matters involving collective bargaining and to decide a class action). Therefore, we reject the State's argument that the WSPTA's status as "exclusive bargaining representative" applies to litigation or situations that are not bargaining. At least on this record, we see nothing else that prevents McClain from having standing to pursue his claims.[15]

V. ADDITIONAL CLAIMS—WAGE REBATE ACT AND UNJUST ENRICHMENT

As noted, McClain specifically addressed only his MWA claim in his briefing and not his WRA claim or tort claim for unjust enrichment. At oral argument, McClain confirmed that his unjust enrichment claim is merely a mechanism for recovery for his statutory claims under the

---

[15] We offer no opinion about whether the claims may eventually be appropriately brought as a class action.

MWA and the WRA. *See* Wash. Ct. of Appeals oral argument, *supra*, at 5 min., through 5 min., 38 sec. However, McClain conceded that the two statutory claims could require different analyses.[16] Neither party provided us any analysis of the WRA claim.

Thus, we limit our decision to McClain's MWA claim (and the tort claim related to the MWA) only. The WRA is a distinct statute that, among other differences with the MWA, includes a general waiver provision; RCW 49.52.070 provides that "the benefits of [the WRA] shall not be available to any employee who has knowingly submitted to such violations." Whether the analysis of McClain's MWA claim would be different for his WRA claim due to this, or some other difference between the two statutes, has not been briefed. Accordingly, while we reverse the superior court's exhaustion decision in its entirety, we do so without prejudice to the State's ability to separately move the superior court, if it so desires, for dismissal of the WRA claim under the theory of exhaustion.

## CONCLUSION

McClain's allegation that his rights under the MWA are being violated may be brought in superior court without exhausting grievance and arbitration procedures under the CBAs. While

---

[16] The following exchange occurred at oral argument with McClain's counsel:

> [Q:] So, . . . if the Wage Rebate Act claim doesn't depend on the Minimum Wage Act claim, then at least in my mind we have to look at those statutory provisions separately, right?
>
> [A:] Correct, your honor.

Wash. Ct. of Appeals oral argument, *supra*, at 3 min., 58 sec., through 4 min., 18 sec.

we do not speculate on whether McClain will ultimately be able to prove a violation, neither the terms of the CBAs nor the supremacy clause of PECBA bar him from trying.  Thus, we reverse the superior court, but without prejudice regarding McClain's WRA claim.

PRICE, J.

I concur:

GLASGOW, J.

LEE, P.J. (dissenting) — The majority holds that the claims brought by the Washington State Patrol (WSP) troopers are allowed to proceed because their claims are independent of the terms of the Collective Bargaining Agreement (CBA). I respectfully disagree.

FACTS

The negotiated terms under the CBAs include the assignment of state vehicles to some troopers, the scope of the troopers' use of their assigned state vehicle, and a determination of when troopers with assigned state vehicles are "on-duty" while commuting in their assigned state vehicle and entitled to compensation. Clerk's Papers (CP) at 98, 128. Specifically, the CBAs' terms regarding commuting in an assigned state vehicle include:

**9.5** **Commute**
Line employees shall be required to be in their [assigned patrol area] or geographic area at the start and end of their work shift and shall advise Radio when they enter and leave their [assigned patrol area]. Employees shall sign in service and travel to and from their [assigned patrol area] on off-duty status, but shall be obliged to take appropriate action in the event of a disabled vehicle, an accident, or a criminal traffic violation observed while commuting. When such appropriate action is taken:

A. The employee shall go on on-duty status while commuting;

B. The employee shall be in overtime status for the period of time preceding his/her normal scheduled shift;

C. The employee shall not be on call-out status; and

D. The employee's normal shift will end at the regularly-scheduled time for that shift.

In such event, the employee shall immediately request assistance from on-duty personnel, and the on-duty status of the employee shall cease as soon as assistance arrives that relieves the employee of the need to take appropriate action. Employees shall not abuse the "take appropriate action" provisions of this Section in an attempt to earn overtime, and employees who so abuse this Section shall be subject to discipline.

30

CP at 98, 128 (emphasis in original).

The State and the Washington State Patrol Troopers Association (WSPTA) specifically negotiated the terms relating to compensation allowed during a trooper's commute in an assigned state vehicle. As stated by Lane Hatfield, who negotiated the CBAs at issue on behalf of the State:

> 6. The State and WSPTA have bargained over and the CBAs contain extensive terms regarding hours of work and pay for troopers. . . .
>
> 7. In addition, the State and WSPTA have bargained over and the CBAs address a broad range of issues relating to troopers' use of their assigned State vehicles to commute between their homes and their work areas. These include: the right of troopers to live and commute to residences outside of their autonomous patrol area ("APA"); the right of troopers to use State vehicles to commute between home and work; the circumstances under which troopers are considered on-duty and off-duty while commuting; and whether and the extent to which troopers receive extra pay while commuting (collectively "Commuting Issues"). My understanding is that the Public Employment Relations Commission ("PERC") has held that these Commuting Issues are mandatory subjects of bargaining, and they appear to be important to the WSPTA and troopers.
>
> 8. During bargaining, the WSPTA has raised Commuting Issues, including the ability of troopers to live outside of their APAs, whether troopers are allowed to use State vehicles to commute between their homes and APAs or assigned work locations, whether (and under what circumstances) troopers are on-duty during their commutes, and whether troopers should be paid for time spent commuting in State vehicles. The WSPTA has also advanced many other economic and non-economic requests. In the bargaining process, the State assesses and places a value on these requests and strikes bargains with the WSPTA. We agree to some requests, and the WSPTA gives up on others. This is how bargaining works, where both sides balance the costs, benefits, and importance of issues. This has been true for Commuting Issues just like any other bargaining issues. In the past, WSPTA has withdrawn proposals for certain paid commute time in exchange for other benefits. Ultimately, these bargaining tradeoffs are submitted to the Governor, the Legislature, and the WSPTA's membership, and the entire bargain (including tradeoffs) is accepted or rejected.

CP at 86-87.

Joseph McClain, Linda Allen, and Jacob Payne (collectively "McClain") filed suit against the State, alleging the State has violated the Minimum Wage Act (MWA) and the Wage Rebate Act (WRA) because troopers are entitled to unpaid wages for "time spent driving Washington State Patrol vehicles between the troopers' homes and their assigned patrol areas or geographic areas." CP at 2. The superior court dismissed McClain's claims, granting the State's motion for summary judgment based on McClain's failure to "exhaust mandatory bargaining, grievance and arbitration, and other statutorily required procedures." CP at 30. As the majority aptly stated, in this appeal, "we are tasked solely with resolving whether McClain is barred from directly bringing [their] statutory claims in superior court without exhausting the procedures in the CBAs." Majority at 3.

ANALYSIS

The majority holds that McClain's MWA claim is independent of the terms of the CBAs, and therefore, McClain may bring their claim in superior court. I respectfully disagree.

The CBAs allow McClain to have an assigned state vehicle. The CBAs also allow McClain to commute to and from their home in their assigned state vehicle. The CBAs further outline the circumstances when McClain is entitled to pay when commuting in their assigned state vehicle. These terms were specifically negotiated and bargained for. McClain's MWA claim arises solely out of the fact that they are commuting in the assigned state vehicle. Without the ability to have an assigned state vehicle allowed for under the CBAs, McClain would have no claim. Therefore, I would hold that McClain's claim for unpaid wages for their commute is not independent of the CBAs and is subject to exhaustion of the grievance and arbitration procedures under the CBAs.

The majority correctly sets forth the legal principles applicable in this case. However, where the majority and I part is in the application of the legal principles to the facts of this case. McClain's MWA claim is "founded directly on [the] rights created by a collective bargaining agreement." *United Food & Com. Workers Union Loc. 1001 v. Mut. Benefit Life Ins. Co.*, 84 Wn. App. 47, 51, 925 P.2d 212 (1996), *review denied*, 133 Wn.2d 1021 (1997), *abrogated in part on other grounds, Seattle Pro. Eng'g Emps. Ass'n v. Boeing Co.*, 139 Wn.2d 824, 834, 991 P.2d 1126 (2000). Undeniably, McClain has no claim whatsoever if they did not have the benefit of an assigned state vehicle that was specifically bargained for in the CBAs. Thus, McClain's MWA claim would not exist without the CBAs.

And the CBAs specifically addressed not only the allowance of an assigned state vehicle, but also included specifically negotiated and bargained for terms addressing the circumstances under which McClain would be paid while commuting in the bargained for assigned state vehicle. To be clear, McClain's MWA claim is not that all troopers should be paid for their commute time. Rather, McClain's MWA claim is limited to troopers commuting in an assigned state vehicle. But the terms under which troopers are paid when commuting in an assigned state vehicle was specifically negotiated and bargained for under the CBA. Hence, McClain's MWA claim is "inextricably intertwined" with the terms of the CBAs. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 863, 93 P.3d 108 (2004). McClain's claims merely attempt to now expand what was already specifically negotiated and bargained for under the CBAs and cannot be characterized as independent. As the majority correctly points out, "'[I]f no cause of action would exist without the CBA' then the claim is not independent." Majority at 11 (quoting Stephanie R. Marcus, *The*

*Need for A New Approach to Federal Preemption of Union Members' State Law Claims*, Note, 99 Yale L.J. 209, 210 n.13 (1989)),

CONCLUSION

I would hold that McClain's MWA claim is not independent of the CBAs and affirm the superior court.

Lee, P.J.